### NEW YORK LIFE INS. CO. v. HALPERN et al.

No. 2494.

District Court, W. D. Pennsylvania.

Oct. 21, 1931.

■■■■■■■■

See, also 47 F.(2d) 935.

Chas. H. Sachs, Louis Caplan, and Sachs & Caplan, all of Pittsburgh, Pa., for defendants.

### Findings of Fact.

GIBSON, District Judge.

1. Plaintiff is a corporation organized and existing by and under the laws of the state of New York, engaged in the life insurance business, and is a citizen of the State of New York.

2. Julius Halpern and Lillian Halpern, two of the defendants, are residents and citizens of the commonwealth of Pennsylvania and of the Western District thereof, and the other defendant, the Fidelity Trust Company, is a corporation duly organized and existing by and under the laws of the commonwealth of Pennsylvania, having its principal office in the city of Pittsburgh, Pa.

3. The amount in controversy in this case exceeds the sum of $3,000, exclusive of interest and costs.

4. On February 8, 1929, the plaintiff wrote its policy of life insurance No. 10,529,-125 to take effect as of the 25th day of January, 1929, with provisions for disability benefits and double indemnity for accidental death in the sum of $10,000 on the life of said Julius Halpern. By the terms of said policy the plaintiff agreed to pay to Julius Halpern $100 a month during total and permanent disability, as defined by said policy, and also by a change of beneficiary directed by said Julius Halpern on July 26, 1929, agreed to pay the death benefit to Lillian Halpern, wife, and Fidelity Title & Trust Company, of Pittsburgh, Pa. (since changed to Fidelity Trust Company), as trustees in accordance with the terms of a trust agreement dated July 26, 1929.

5. On April 27, 1929, the plaintiff wrote its policy of life insurance No. 10,630,938 to take effect as of the 30th day of April, 1929, with provisions for disability benefits and double indemnity for accidental death in the sum of $15,000 on the life of said Julius Halpern. By the terms of said policy the plaintiff agreed to pay to Julius Halpern $150 a month during total and permanent disability, as defined by said policy, and also by a change of beneficiary directed by said Julius Halpern on July 26, 1929, agreed to pay the death benefit to Lillian Halpern, wife, and Fidelity Title & Trust Company, of Pittsburgh, Pa. (since changed to Fidelity Trust Company), as trustees in accordance with the terms of a trust agreement dated July 26, 1929.

6. Attached to and made part of the contract of insurance No. 10,529,125, issued as of January 25, 1929, was the application for the policy signed by the defendant Julius Halpern. This application in part consisted of questions to the applicant and answers purporting to have been given on January 19, 1929, by him to plaintiff's medical examiner relative to the past condition of his health, certain of said questions and answers being as follows:

"7. B. Have you ever been under observation or treatment in any hospital, asylum or sanitarium? No.

"8. Have you ever consulted a physician or practitioner for or suffered from any ailment or disease of

"A. The brain or nervous system? No.

"B. The heart, blood vessels or lungs? No.

"C. The stomach or intestines, liver, kidneys or bladder? No."

"10. Have you ever consulted a physician or practitioner for any ailment or disease not included in your above answers? No.

"11. What physicians or practitioners, if any, not named above, have you consulted or been examined or treated by within the past five years?

| Name and Address | Date | Reason for Consultation, Examination or Treatment and Results |
|---|---|---|
| Dr. Grecken | 1928 | Influenza—3 days" |

7. Attached to the policy No. 10,630,938, and made part of it, was a declaration, signed by Julius Halpern, dated April 27, 1929, that the applicant, Julius Halpern, had not consulted or been treated by any physician or other practitioner since his application dated January 19, 1929.

8. The defendant Julius Halpern, from November 19 to 26, 1928, had undergone a complete physical examination by Henry M. Ray, M. D., a specialist in pathology and internal medicine. Said examination was made at the request of Julius Halpern for the purpose of "checking up" on his physical condition. As a part of his said examination, Dr.

Ray sent Julius Halpern, about November 26, 1928, to Dr. F. L. Schumacher, a specialist in X-ray examinations, for X-ray examination to be used by him in connection with his (Dr. Ray's) examination and report thereon. As a result of the examination of Dr. Ray, supplemented by the X-ray examination and report of Dr. Schumacher, Julius Halpern, prior to the date of his application for insurance, was informed by Dr. Ray, in effect, that his heart was not "up to 100%"; that it was "a little below par"; that it was perhaps slightly enlarged; that it was sufficiently strong for ordinary use, but should not be subjected to extraordinary exertion; that, for the purpose of helping the heart, he should by diet and light exercise reduce his weight. He was not told that he had any organic heart disease, the physicians themselves, at that time, finding only a suggestion of myocardial degeneration from their examinations. Other than the examination of Dr. Ray, aided by the examination and report of Dr. Schumacher, no treatment or examination of Julius Halpern by a physician is disclosed by the testimony except that of Dr. Grecken, disclosed by the answers of the application. No hospitalization is shown prior to the issuance of the policies in suit.

9. Each of said policies contains the following provision:

"Incontestability.—This Policy shall be incontestable after two years from its date of issue except for non-payment of premium and except as to provisions and conditions relating to Disability and Double Indemnity Benefits."

10. The date of issuance of policy No. 10,529,125 is January 25, 1929, and of policy No. 10,630,938 is April 30, 1929.

11. Said Julius Halpern on December 26, 1930, brought an action at law at No. 4054 January term, 1931, against the plaintiff in the court of common pleas of Allegheny county, Pa., which action has been removed to this court and is No. 6474 Law therein, and is for disability benefits only.

12. On or about September 15, 1930, the plaintiff, seeking to rescind the contracts of insurance mentioned in the fourth and fifth findings of fact, notified defendants of its intention, and tendered the return of the premiums received on account of each policy, with interest from the date of receipt to the date of tender, amounting to $1,863.66. This tender was refused by defendants.

13. Julius Halpern was not the prime mover in his application to the plaintiff for insurance, but had theretofore been solicited to apply for it by an agent of the plaintiff. After application had been made by him, a policy in amount of $25,000 was tendered to him and was refused, said defendant accepting the policy No. 10,529,125, which was for $10,000. Later, again at the solicitation of plaintiff's agent, he applied for and received the policy dated April 27, 1929, $15,000 in amount.

14. The testimony does not clearly and firmly establish as a fact that Julius Halpern, the defendant, made false answer to, or actually made direct answer to, the question "8. B," which appears as a part of the application for the policy No. 10,529,125, viz., "Have you ever consulted a physician or practitioner for or suffered from any ailment or disease of * * * B. The heart, blood vessels or lungs?" Or to the question 10 in the same application, viz., "Have you ever consulted a physician or practitioner for any ailment or disease not included in your above answers?" Or to question 11 in the same application, viz., "What physicians or practitioners, if any, not named above, have you consulted or been examined or treated by within the past five years?"

15. The copy of the application for insurance attached to and made part of the policy No. 10,529,125 is a photographic copy of the original application taken in such manner that the print appears so small and blurred as to be almost illegible to eyes of ordinary strength.

### Discussion.

█ In seeking the cancellation of the defendant's policies of insurance, the plaintiff, in its bill, has based its charge of fraud upon a number of answers to questions attached to the policies and made part of the contracts, alleged to have been given to plaintiff's medical examiner. Upon trial proof was tendered only in respect to the two following questions and answers:

"8. Have you ever consulted a physician or practitioner for or suffered from any ailment or disease of

"* * * B. The heart, blood vessels or lungs? No."

"11. What physicians or practitioners, if any, not named above, have you consulted or been examined or treated by within the past five years? Dr. Grecken, 1928, Influenza—3 days."

The plaintiff, after producing testimony tending to show that the foregoing questions had been duly put to the insured by its medi-

cal examiner, proved that insured had undergone a full pathological examination by a physician, Dr. Ray, several months prior to the application for the policies, and, as incident to and in aid of Dr. Ray's examination, he had also undergone X-ray examinations by Dr. Schumacher. Plaintiff contends that this examination by Dr. Ray disclosed that the insured had a diseased heart, that the testimony shows that this fact was imparted to him at the conclusion of the examination, and that his answers to the questions of the medical examiner established a willful and fraudulent suppression of information the insurer was entitled to have.

The defendant has admitted the examination by Dr. Ray, but denies that the plaintiff's medical examiner put to him the questions appearing in the applications for the policies and that he answered as asserted by the examiner. His testimony tends to show that he was asked, in effect, whether he had any serious illness during the preceding five years, to which he stated in reply that he had been confined to his bed for three days by influenza; and upon inquiry as to the physician who attended him, he gave the name of Dr. Greeken. Defendant Julius Halpern asserts that the paper containing his alleged answers was signed by him without reading by reason of the examiner's desire for haste.

Passing over the dispute as to the scope of the medical examination, the charge of misrepresentation and deceit cannot be based upon the answer to the question numbered "8. B."; and we hold this opinion irrespective of the contentions in respect to the examination questions. A number of medical examinations of Julius Halpern are disclosed by the evidence, and certain of those made subsequent to the dates of the applications for the policies in suit disclose a heart condition which was not good. The knowledge obtained by the later examinations cannot be attributed to the applicant at the time of application. From the testimony relative to the first examination of Dr. Ray, and particularly considering the written report of Dr. Schumacher to Dr. Ray, adopted by the latter, it is plain that the physicians, at that time, had no fixed opinion that Mr. Halpern had any disease of the heart; and having no such opinion themselves, it is inconceivable that they told or left the impression with Mr. Halpern that he had such a disease. True, Dr. Ray told him that his heart was a little below par, and possibly that it was slightly larger than average size, but when that statement is considered in connection with the emphasis placed by Dr. Ray upon his patient's overweight, and his suggestions as to diet and light exercise, it doubtless had the effect of satisfying Mr. Halpern that nothing was wrong with his heart, which could not be cured by diet and exercise. Assuming his acceptance of his physician's finding, he had no reason to assert that he had heart disease by an affirmative answer to the question "8. B.," supra.

The answer to the eleventh question, if recorded correctly by the examiner, presents a more serious matter. If that question had been plainly put to the applicant, the plaintiff was entitled to the disclosure of Dr. Ray's examination, aided by Dr. Schumacher's X-ray photographs, and it would seem that in good faith the applicant should have mentioned it, even though the result was more or less negative. While some doubt may exist as to the materiality of the suppressed matter if it be assumed that the question had been put to the applicant, we are not required to resolve it, as in our opinion the testimony indicates that the question was not asked as recorded. The medical examiner, arguing from his usual practice, has stated—and no doubt honestly—that the questions and answers were as recorded. On the other hand, the defendant Julius Halpern has testified otherwise. He asserts that the examiner was in haste at the time of the examination and asked him only, in effect, whether he had been confined to his bed by any illness within the past five years, and then, after reply that he had been confined by the influenza for three days, what physician had attended him; and to the last question the applicant had named Dr. Greeken. The defendant has gone into considerable detail in relating the circumstances of the examination, and his story is not inconsistent with past experience. His version is corroborated, to some slight extent at least, by the fact that the answers to the eleventh and twelfth questions are somewhat contradictory, and by the further fact that he later disclosed Dr. Ray's examination to an agent of the plaintiff company when the latter was interviewing him upon his application for disability benefits under the policy. The last disclosure tends to show that defendant, at the first medical examination, did not willfully withhold knowledge of Dr. Ray's examination from the plaintiff.

█ Counsel for the plaintiff urges, in effect, that defendants are estopped from asserting any error in the recorded answers. He points to the fact that Julius Halpern had the policies in his possession for a considerable time, and contends that he must be

presumed from that fact to have known their contents. He further asserts that if any errors in the answers appeared in the application made part of the contract, it was the duty of the insured to promptly call the attention of the insurer to such errors, and in the absence of such action that defendants must be held to the terms of the application as written. In support of this position counsel has cited New York Life Ins. Co. v. Fletcher, 117 U. S. 519, 6 S. Ct. 837, 29 L. Ed. 934. In the case cited the applicant warranted the truth of the answers, the answers in the present case being representations. This distinction is perhaps of no moment, the real distinction being found in the nature of the copy of the application attached to the policy. The application of the instant policy, in the preparation of the copy, was placed at such a distance from the camera that the print of the resultant copy was so small as to be practically illegible. No person other than one whose suspicions had been aroused would undertake the eye strain and irritation necessarily incident to reading it. Having attached a copy designed to prevent a reading, the plaintiff is not entitled to invoke a presumption of reading and a duty arising therefrom.

Being of opinion that the proof in the instant case is not sufficiently strong and convincing to justify a finding of fraud on the part of the insured in obtaining the policies in suit, we shall dismiss the bill.