Edward J. Greenfield, J.
Arnold R. Krakower, an attorney and member of the New York County Lawyer’s Association, had previously been covered by a term policy with defendant under the association’s life insurance program. On May 9, 1968 he made application to defendant company to increase the coverage .on his life by an additional $40,000, naming his wife as beneficiary, and at the same time applying for $5,000 insurance on the life of his wife, with himself as beneficiary.
In the application, Mr. Krakower declared that he was in good health, regularly performing the duties of his occupation, without any health impairment, had not been hospitalized in the last five years, and had seen a physician in that period only for colds, virus, and annual checkups. He said the same for his wife. The defendant insurance company duly issued the additional insurance policy on June 27, 1968, which would have become incontestable after one year. Arnold Krakower, having paid all premiums due, died nine months thereafter, on April 4,1969.
Upon investigating the claim for the insurance benefits duly filed by the widow, the insurance company learned that the facts as stated in Krakower’s application had been untrue, and it disclaimed, tendering back the premiums paid. Far from being *250 in.good .health at the time, as represented, Krakower, the undisputed facts', show, had been suffering for over 20 years from . polycythemia an insidious disease resulting in marked proliferation of the red blood cells and internal bleeding, ultimately resulting in complications and death. Although on his medical examination on June 27,1968, he had reported a tonsillectomy in childhood, an . appendectomy in 1925, and a cholecystomy in 1952,-. he failed to" disclose a series of eight hospitalizations from ,1952 to .1968 for treatment of ■ the polycythemia and internal bleeding. The most recent hospitalization had been in New York Hospital, from june 7 to June 14, 1968, only two weeks before the medical examination and questionnaire, fot a worsening of his. condition. There can be little doubt that the insured was fully aware of his condition, and that that was the motivation for his attempting to procure additional insurance without disclosing his true state of health. If he survived for one year, the policy would become incontestable and his misrepresentations could not be called into question. He didn’t make it.
Despite the clear, case of fraud and misrepresentation by the insured, as part of a calculated gamble by him, the widow, in this ■ action for the proceeds of the policy, contends that the insurance company is precluded from raising the defense of fraud and misrepresentation because of alleged noncompliance by the company with section 142 of the Insurance Law. That section provides:
“ 1. Every policy of life, accident or health insurance, or contract of annuity, delivered or issued for delivery in this state shall contain the entire coútract between the parties, and nothing shall be incorporated therein by reference * * * No application for the issuance of any such policy or contract shall be admissible in evidence unless a true copy of such application was attached to such policy when issued.”
It is the plaintiff’s position that if any part of the copy of the application is illegible or difficult to read, it is not a true copy, and is inadmissible.
The application for the policy in suit was in three parts, photocopies of each of which were attached to the policy issued to the insured. The" first part was the application by Krakower for $40,000 in additional insurance-, naming his wife as beneficiary, and answering four questions as to the state of his health. The second part, on the reverse side of the first, is. an application by Krakower for a dependent’s rider on the life of his wife, in the sum of $5,000, designating himself as beneficiary, and answering four questions as to the state of her *251 health. The third part is the medical history and questionnaire, filled out by the insurance physician, the truth of the answers and statements being represented as true by' the insured. It was conceded that copies of all parts' of the application were annexed to the policy issued to the insured, and that the-first and third parts dealing with the application for insurance on Krakower’s life were clear, true and legible "copies, but the photocopy of the second part, dealing with the application for $5,000 insurance on the life of the wife was light and underexposed, raising a dispute as to its legibility. . . "..
Defendant moved for summary judgment on the ground that the misrepresentations were 'undisputed. Plaintiff opposed, urging that since the photocopy of one part of the application was underexposed, it had to be considered illegible, and hence not a true copy as required by section 142 of the Insurance Law, so that defendant would be precluded on the trial from raising the issue of misrepresentation in the application. Spiegel, J., held that a true copy of the application means a true, correct, legible and entire copy of the contract (citing 1 Couch, Insurance, 2d ed., § 4:18; Arter v. Northwestern Mut. Life Ins. Co., 130 F. 768; New York Life Ins. Co. v. Halpern, 57 F. 2d 200, affd. 61 F. 2d 1037; Adamos v. New York Life Ins. Co., 5 F. 2d 278, rehearing den. 5 F. Supp. 1019, affd. 71 F. 2d 997, revd. other grounds 293 U. S. 386; Enelow v. New York Life Ins. Co., 83 F. 2d 550, cert. den. 298 U. S. 680; and Ostrov v. Metropolitan Life Ins. Co., 260 F. Supp. 152). The question of legibility, he held, ¡was an issue of fact for determination by the jury.
The case thereafter came on for trial before me, and a jury. was asked to respond in a special verdict to the following question: “ Is the copy of the application for the dependent’s term rider a true, correct and legible copy of the original application?” The jury responded in the negative.
The copies of the application for insurance on the life of Mr. Krakower and the medical questionnaire relating to him concededly ¡were true and legible copies. Does illegibility of the copy of the application for insurance on the life of Mr. Krakower’s dependent, his wife, -prevent the insurance company from demonstrating the falsity of Ms application? .
Although this court may have a differing view as to the legibility of the copy of the application for the dependent’s insurance, the jury finding to the contrary does not dictate a judgment for the plaintiff. It is the contention of the plaintiff that the application must be treated as an indivisible whole (Prudential Life Ins. Co. v. Mittler, 266 App. Div. 952), *252 and that if any portion of it is illegible, no part of it can be considered admissible.
The purpose of the provisions of section 142 of the Insurance Law was to eliminate the evils of insurance companies defending against claims based on applications which were not made part of the policy. Only the providing of a true and correct copy of the application was deemed sufficient to advise the insured as to exactly what representations were made, so that corrections could be effected if any mistakes showed up. (Cutler v. Hartford Life Ins. Co., 22 N Y 2d 245; Archer v. Equitable Life Assur. Soc. of U. S., 218 N. Y. 18.)
In Prudential Life Ins. Co. v. Mittler (supra), the application for insurance was held to consist of two papers, one being the application and the other being the declaration made to the examining physician. It was held true copies of both papers had to be attached. In the instant case, both such papers, the application of Mr. Krakower and his declaration to the examining physician were physically annexed to the policy and were clear and legible. There can be no dispute as to the representations that Mr. Krakower made as to the state of his own health. The only document as to which a question of legibility is raised is the application for the dependent’s term rider. While that appeared in form to be a rider to and a part of the insurance policy issued to Mr. Krakower, a member of the New York County Lawyers Association, in actuality it is a separate policy of insurance. The risk covered is different — the life of Mrs. Krakower; the amount of the insurance is different; the named beneficiary is Mr. Krakower; and separate premiums are computed on it. The only reason it does not stand as a wholly independent and viable life insurance contract is that its continuation depends on the keeping of the husband’s policy in full force and effect, although there is a conversion privilege. Thus, it is pure happenstance that the application and the questions and answers as to the state of health of Mrs. Krakower are physically annexed to the over-all policy. It is a separable contract. Lightness in the copy of the application for insurance on the wife should not avail to defeat a clear case of fraud' and misrepresentation in the procuring of insurance on his own life by the husband. He was an experienced lawyer. He could read the papers constituting the copy of his application, and he undoubtedly must have known of their falsity. 'Such a fraud -cannot be countenanced by reliance upon a technicality attenuated to the extreme;
*253 - There appear to be no cases directly in point. The closest is a case in South Carolina (Kilpatrick v. Brotherhood of R.R. Trainmen, 210 S. C. 379). In that case, the insured filled out a single application for both life insurance and accident and health insurance. Two separate policies were issued simultantaneously, but a copy of the application was attached solely to the accident and health policy. The Trial Judge’s holding, affirmed by the appellate court, was that the purpose of the statute was to give the insured the opportunity of knowing what was contained in the application, and that purpose was served by furnishing him with one copy of the application covering both policies and that to hold otherwise and preclude the insurance company from proving misrepresentation would be to sacrifice substance for form. In this case, we have the. converse situation — in effect two applications annexed, to one policy. The underlying principle must be the -same. If adequate notice of the representations was afforded to the insured through annexation of a true copy of his application, all else becomes a quibble. Hence, notwithstanding the special verdict of the jury, the defendant is entitled to judgment dismissing the complaint.