## GERBER et al. v. BORDERLAND COAL SALES CO.

(Circuit Court of Appeals, Sixth Circuit. April 6, 1925.)

No. 4205.

1. **Contracts ⬤⇒316(6)—Acceptance of performance after breach not waiver of right to recover damages for breach.**

Acceptance of performance after breach may operate as a waiver of the right to treat the contract as terminated by the breach, but is not per se a waiver of the right of action to recover damages therefor.

2. **Trial ⬤⇒250—Submission to jury of question not in issue held error.**

Submission to the jury of the question whether buyer had waived the right to recover damages for seller's breach of the contract sued on *held* error, on the ground that the question was not in issue under the pleadings or evidence.

In Error to the District Court of the United States for the Western Division of the Southern District of Ohio; Smith Hickenlooper, Judge.

Action at law by Edward F. Gerber and others against the Borderland Coal Sales Company. Judgment for defendant, and plaintiffs bring error. Reversed, and new trial ordered.

Walter M. Shohl, of Cincinnati, Ohio (Dinsmore, Shohl & Sawyer, of Cincinnati, Ohio, on the brief), for plaintiffs in error.

O. W. Bennett and Charles J. Hunt, both of Cincinnati, Ohio (Hunt, Bennett & Utter, of Cincinnati, on the brief), for defendant in error.

Before DENISON, DONAHUE, and KNAPPEN, Circuit Judges.

KNAPPEN, Circuit Judge. This suit is brought by plaintiffs in error to recover damages for defendant's failure to deliver coal under two contracts between defendant, as the seller, and United Coal Mines, Inc., as the buyer. The first contract was made June 29, 1922, and provided for the purchase and sale of 300 cars (approximately 15,000 tons) of Elkhorn mine run coal at $3.30 per ton, to be delivered at the rate of 100 cars per month during June, July, and August. The other contract, made July 8, 1922, called for 150 cars (approximately 7,500 tons) of Williamson coal at the same price, deliveries during substantially the same period, and to be completed October 5, 1922. Each contract provided for deposit by the buyer of $1 per ton, viz. $15,000 under the first contract and $7,500 under the second, to be applied at the rate of $1 per ton of coal as delivered—the remaining $2.30 per ton to be paid thereafter. The deposits were duly made. There were delivered during the contract period 96 cars under the first contract and 54 cars under the second contract. Later 45 cars were delivered under the first contract and 8 under the second. Plaintiffs, who sue as assignees of the United Coal Mines, Inc., claim that these later deliveries, aggregating 53 cars, were made to apply, at $3.30 per ton, upon plaintiffs' damages, reducing the net amount claimed to practically $48,000.

Defendant denies liability for delays in delivery on the grounds, first, that the failures to deliver were caused by mining strikes and other contingencies not under their control and claimed to be covered by the contracts of purchase and sale;[1] and, second, that nondelivery was justified by the failure of the United Coal Mines, Inc., to keep its deposits good, in that the last-named company, from time to time during the contract period, incurred indebtedness to defendant in the net amount of about $18,000 by way of trade accommodation acceptances. Defendant not only denied all liability to plaintiff, but sought recovery for the $18,000 plus, including interest, together with the unpaid balance on coal actually delivered, amounting in all to upwards of $28,000. It is conceded that defendant was entitled to that amount, if plaintiffs had no claim for damages for failure to make delivery. The verdict and judgment denied recovery by plaintiff, and awarded defendant its claim as stated.

[1, 2] 1. Plaintiffs' main complaint is that the court's charge permitted the jury to find against plaintiffs' claim on the ground that damages for a breach of the contract had been waived by plaintiffs by proceeding with the contract as if the breach had not occurred. The court, in summing up, said: "If a party does not rest upon an alleged breach by the other party, but continues the performance of the contract, and both sides go on as if there had been no such breach, such breach cannot be made the predicate of either recovery or defense, because, having been waived, it is as if it had never happened." This instruction was given in response to a request by the jury that previ-

---

[1] Defendant asserts in this connection that at the time of making the first contract, by telephone, it advised plaintiff that, on account of the small margin (10 cents per ton) on which it handled the coal, it was not to be held for any liability if the mines from which defendant was to get the coal failed to deliver.

ous instructions "relative to waiver or violation of contract as to subsequent right of action for damages on said contract" be again given. The speedy rendition of verdict following the instruction makes it fairly inferable that it was based upon the theory of waiver.

Passing the question whether the defense of waiver was precluded by failure to plead it, as well as the question whether plaintiffs' exception was broad enough to challenge the definition applied by the court, the correctness of which plaintiffs deny,[2] we think plaintiffs entitled to complain that the broad subject of plaintiffs' complete waiver of damages was submitted at all to the jury. We find nothing in the record which we think fairly suggests that the subject of waiver of plaintiffs' damages was raised by defendant on the trial; and a careful examination of the record fails, we think, to indicate any substantial evidence tending to show that the plaintiffs waived claim for damages for breach of the contract of sale as distinguished from waiver of the right to treat the breach as terminating the contract. On the contrary, the United Coal Mines, on August 23, 1922, in writing, notified defendant that "we propose to hold you responsible for the shortage, and to charge you back with the difference between our contract price and the ruling market price." Again, one of the plaintiffs testified that on October 10, 1922, at a meeting between him and representatives of the defendant and the Williamson Pond Creek Coal Company, for the purpose of trying to settle plaintiffs' damage claim against defendant for diversion of coal, and the latter's claim against the Williamson Company, arising out of the contracts, he notified defendant that plaintiffs proposed to hold it for whatever claims plaintiffs had, which seem to have covered not only coal diverted, but generally that not shipped under the contract, and that defendant's representative stated that defendant would get all the coal that the Williamson Company would ship defendant, turning it over to plaintiff, payment therefor to apply against plaintiffs' claim for damages, "to be deducted upon an amicable settlement which we were trying to arrive at."

The witness also testified that on October 17, 1922 (the Williamson Company failing to appear), he again went over plaintiffs' account with the defendant, which was checked over by defendant's representative, and that the claim sued upon, viz. about $58,000, was the same as the statement checked and verified in that conference with defendant's representative. While that representative denied that any agreement was made that plaintiffs were damaged, and that coal was to be shipped on account thereof, we find nothing fairly indicating any suggestion of waiver of plaintiffs' claim. On the contrary, defendant's representative admits that, after a conversation with one of the plaintiffs, inferably after one of the alleged October interviews, he made claim against the Williamson Company that the market values were much in excess of the $3.30 per ton, and began suit against that company.

We are constrained to think that, upon this record, the 53 cars delivered to plaintiffs after October 10th[3] can be treated only as having been supplied and received by way of actual performance, pro tanto, of the contract here involved, and, in the absence of anything to the contrary, should be considered as allocable to the July shortage,[4] and that their acceptance does not tend to show waiver of any damages for nondelivery of other cars, or to show that any new contract was made after October 7th for the later delivery of all the cars in default, especially as each party seems to have understood that the full shortage could not be made up; and in the absence of agreement for making up either the full shortage or any definite part thereof, there could have been no effective waiver of damages, except as to the number of cars actually so delivered. The instant case is thus not brought within Kalamazoo Fuel Co. v. Gerber, 4 F.(2d) 235, decided by this court December 8, 1924. These conclusions require a reversal of the judgment.

2. Plaintiffs complain that verdict was not directed in their favor. We think there was sufficient evidence to justify submitting to the jury the defenses other than waiver, to which reference has been made.

---

[2] Acceptance of performance after breach may operate as a waiver of the right to treat the contract as terminated by the breach, but is not (per se) a waiver of the right of action to recover damages therefor. Frankfurt, etc., Co. v. William Prym Co. (C. C. A. 2) 237 F. 21–28, 150 C. C. A. 223, L. R. A. 1918A, 602; 5 Page on Contracts (2d Ed.) par. 3067; 2 Williston on Contracts, § 703.

[3] The market price on September 30th and on October 5th was $5.50. Later prices do not directly appear, although it is open to inference that the market in the latter part of October was close to the contract price of $3.30.

[4] It happens that the market price at the end of July ($8.50 to $9.50) was much higher than at the end of either of the other months of the contract period.

3. After issue was joined, plaintiffs' receiver was substituted as party plaintiff. Error is alleged upon the rendition of verdict and judgment against plaintiffs personally under defendant's cross-petition. Without intimating whether or not we regard this complaint as substantial, we think we are not called upon now to consider it. It may never arise upon a new trial. It is even conceivable that defendant may seek to offset its claim against plaintiffs as against a' possible judgment against defendant.

For the error in submitting the question of plaintiffs' waiver, the judgment of the District Court is reversed, and a new trial ordered.