Alfonso AVITIA, Plaintiff–Appellee,
Cross–Appellant,

and

Diane Larsen, Plaintiff–Appellee,

v.

METROPOLITAN CLUB OF CHICAGO,
INCORPORATED, Defendant–
Appellant, Cross–Appellee.

Nos. 94–1356, 94–1423, 94–1586.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 1, 1994.

Decided March 1, 1995.

Ernest T. Rossiello (argued), Margaret A. Zuleger, Rossiello & Associates, Chicago, IL, for Alfonso Avitia, Diane Larsen.

Andrew J. Fisher, Rudnick & Wolfe, James S. Gordon, Edward Slovick, Don E. Glickman (argued), Gordon & Glickman, Chicago, IL, for Metropolitan Club of Chicago, Inc.

Before POSNER, Chief Judge, and BRIGHT * and KANNE, Circuit Judges.

POSNER, Chief Judge.

Waiters at the Metropolitan Club in Chicago sued the Club. They claimed, first, that they had been denied overtime wages to which the Fair Labor Standards Act, 29 U.S.C. § 201 et seq., entitled them and, second, that one of their number, Alfonso Avitia, had been fired, in violation of the Act's prohibition against retaliation, 29 U.S.C. § 215(a)(3), for asserting his right to overtime wages. A jury returned a verdict (upon which the district judge entered judgment) for six of the plaintiffs, including Avitia. The Club appeals from the judgment for Avitia and one other plaintiff, Diane Larsen, and Avitia cross-appeals from the district judge's refusal to order the Club to reinstate him. An earlier phase of the litigation is reported at 924 F.2d 689 (7th Cir.1991).

The only issue concerning plaintiff Larsen is a narrow one, and let us get it out of the way first. The Fair Labor Standards Act directs the award of liquidated damages in an amount equal to the plaintiff's actual damages (in other words, the plaintiff receives double damages), 29 U.S.C. § 216(b), except that the district judge can in his discretion excuse the defendant from paying liquidated damages if he finds that the defendant was acting in good faith and reasonably believed its conduct was lawful when it violated the Act. 29 U.S.C. § 260. Judge Norgle did not abuse his discretion in declining to exercise forgiveness in this case. Fowler v. Land Management Groupe, Inc., 978 F.2d 158, 163 (4th Cir.1992). The Metropolitan Club had a history of violating the Act. This was enough all by itself to justify him in refusing to exercise on the Club's behalf an avowedly discretionary judicial power of mercy for violators. Double damages are the norm, single the exception. Walton v. United Consumers Club, Inc., 786 F.2d 303, 310 (7th Cir.1986). We need not decide whether it would ever be an abuse of discretion to deny a plea of mercy by a violator of the FLSA; it is enough that a recidivist is not entitled to mercy. Indeed it could be argued—how compellingly we also need not decide—that a judge would be abusing his discretion to exercise it in favor of a recidivist. Cf. Thomas v. Howard University Hospital, 39 F.3d 370, 373 (D.C.Cir.1994).

The remaining issues concern Avitia. The Club argues that there was insufficient evidence that it fired Avitia in retaliation for his having claimed overtime, that the district judge committed numerous errors at trial, and that Avitia's damages are inflated. The first argument has no merit at all. When we construe the evidence as favorably to Avitia as the record permits, as we must do when evaluating a motion for judgment as a matter of law, there plainly is enough to support the jury's verdict. Avitia had been employed by

the Metropolitan Club for thirteen years, the last eleven of these as a banquet captain. He had received no disciplinary sanction or warning in the last twelve of the thirteen years when in March of 1988, in the course of an audit of the Club by the Department of Labor, he told the auditor that he had worked overtime and had not been paid for his overtime work at the statutory rate of one and one-half times his regular wage. Just hours before the audit, Avitia's supervisor had told him that Avitia owed a lot to the Club and that the Club's general manager "would be very upset with anyone who was claiming overtime." Right after the audit the supervisor began behaving coldly toward Avitia. Within a few weeks Avitia began receiving disciplinary write-ups for such delicts—all of which he denied—as serving cake on cardboard rather than on silver or crystal platters. He was given a three-day suspension but ordered to work anyway. In July, four months after the audit, he was fired. The Club presented testimony that the delicts really had occurred and had been serious, that Avitia had a bad personality, and that the timing of his firing in relation to the audit was adventitious. But the jury was entitled to disbelieve the Club's witnesses.

█ As a reminder to future appellants, we point out that a statement of facts which, as the Club's does, treats contested testimony of the losing party's witnesses as "facts" violates 7th Cir.R. 28(d)(1). We have not yet stricken a brief for a violation of this rule, *Harris v. DeRobertis*, 932 F.2d 619, 624 n. 2 (7th Cir.1991), but let this opinion be a warning that we have the power, and may one day have the inclination, to do so. Cf. *Holmberg v. Baxter Healthcare Corp.*, 901 F.2d 1387, 1392 n. 4 (7th Cir.1990); *Derrickson v. City of Danville*, 845 F.2d 715, 719–20 (7th Cir. 1988); *Westinghouse Electric Corp. v. NLRB*, 809 F.2d 419, 424–25 (7th Cir.1987). We are not sticklers, precisians, nitpickers, or sadists. But in an era of swollen appellate dockets, courts are entitled to insist on meticulous compliance with rules sensibly designed to make appellate briefs as valuable an aid to the decisional process as they can be. A misleading statement of facts increases the opponent's work, our work, and the risk of error.

We turn to the rulings at trial that the Club contends were erroneous. First in time is the district judge's refusal to sever the trials of the nine plaintiffs. Several of the plaintiffs alleged violations just of the overtime provisions of the Act; several alleged violations of just the retaliation provision; several alleged both sorts of violation. The Club argues that the cases of the plaintiffs who were charging retaliation should have been tried separately from the cases of the plaintiffs who were complaining only about being denied overtime pay, because the jury, knowing that the Club was being accused of varied and prolific violations of the Fair Labor Standards Act, would be prejudiced against the Club when the time came to decide the retaliation cases. Harmed, no doubt; but "prejudiced," implying the sort of harm of which a litigant is entitled to complain? We think not. The overtime violations were essential background to the claim of retaliation by Avitia and others, and so would have come into evidence—and properly so—even if his case had been tried by itself. And against the so-called prejudice must be weighed the cost to the parties and the judicial system of having to conduct two or more trials instead of one, each of which would have involved substantial duplication of the other or others.

█ This process of weighing gains against losses when both are imponderable is, in the nature of things, committed to the discretion of the district judge. Fed.R.Civ.P. 20(b). We know this not only from the rule itself, but also from cases involving the severance of plaintiffs from class actions, *Duke v. Uniroyal, Inc.*, 928 F.2d 1413, 1420–21 (4th Cir.1991); *Davis v. Mason County*, 927 F.2d 1473, 1479–80 (9th Cir.1991); *Jolley v. Welch*, 904 F.2d 988, 994 (5th Cir.1990); *Smith v. Lightning Bolt Productions, Inc.*, 861 F.2d 363, 370 (2d Cir.1988), as well as from the innumerable cases upholding the denial of motions by criminal defendants to be tried separately. *Zafiro v. United States*, — U.S. —, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993); *McLaughlin v. State Farm Mutual Automobile Ins. Co.*, 30 F.3d 861, 870 (7th Cir.1994); *United States v. Bond*, 847 F.2d 1233, 1240

(7th Cir.1988); *United States v. Shively*, 715 F.2d 260, 267 (7th Cir.1983). We have no basis for thinking that Judge Norgle abused his discretion. The fact that the jury brought in verdicts *against* three of the plaintiffs who charged the Club with retaliation tends to vindicate his decision not to sever.

█ The judge refused to declare a mistrial when, during a break right after the jury had been impaneled, one of the plaintiffs approached a juror and reminded him that the two had known each other in high school. After questioning this juror and satisfying himself that the juror could render an impartial verdict despite the contact with the plaintiff—for the juror and the plaintiff had been slight acquaintances rather than friends—the judge denied the Club's motion for a mistrial. The misbehaving plaintiff, perhaps distressed by the judge's rebukes, absented himself from the trial and his case was dismissed shortly after the trial began, so his juror classmate never did have his impartiality tested. This sequel, like the previous one, vindicated another discretionary judgment that we review with a light hand. The question whether to declare a mistrial because of improper contacts with a juror, like the question whether to sever the trial of a case involving multiple parties, is judgmental and managerial in nature rather than "logical." It does not lend itself to governance by general rules uniformly applied, and is best answered by the front-line judge, who has a better experiential basis than we for assessing the effect of a joint trial or an improper jury contact on the course and outcome of the trial. *Artis v. Hitachi Zosen Clearing, Inc.*, 967 F.2d 1132, 1142–43 (7th Cir.1992); *Haugh v. Jones & Laughlin Steel Corp.*, 949 F.2d 914, 917 (7th Cir.1991).

█ The Club has two complaints about the instructions to the jury. The first is that the judge should not have instructed the jury that "in determining whether the plaintiffs' participation in this suit was a factor in their discharge or in the harassment alleged, the timing of [or?] close sequence of events raises an inference that there was a causal relationship between the joining in the suit and the discharge or harassment." In "partic-ipation in this suit" the judge meant to include Avitia's cooperating with the overtime audit.

With captivating candor, Avitia's lawyer acknowledged to us at argument that the instruction should not have been given, but contended that the error was harmless. We agree with him on both points. The instruction was based on language in *Holland v. Jefferson National Ins. Co.*, 883 F.2d 1307, 1315 (7th Cir.1989), and in many other cases, which observe, commonsensically enough, that the timing of a discharge or other adverse personnel action in relation to the employee's act that invited retaliation can be circumstantial evidence of retaliation. But there is a difference, important although subtle, between treating a "close sequence of events" (and it must be close, cf. *Tobey v. Extel/JWP, Inc.*, 985 F.2d 330 (7th Cir.1993)) as circumstantial evidence of retaliation and suggesting that it gives rise to an inference of retaliation. That suggestion is a garbled, and really quite nonsensical, version of Hume's theory of causation—that when one event ($B$) has in the past always followed another ($A$) in swift succession, the human mind develops a fixed expectation that whenever $A$ is observed, $B$ will occur, and that this expectation is all we mean by calling one thing the "cause" of another. This is a far cry from saying that an inference of causation may rationally be drawn whenever two events occur in close sequence. That would mean that if Avitia was fired at 4:30 p.m. and the sun set at 4:40, an inference would arise that his firing caused the sun to set. No effort was made to prove that whenever a waiter employed by the Metropolitan Club complains about a violation of the Fair Labor Standards Act, he is fired; that would be like our $A$ and $B$ case. The structure of Avitia's argument was different. It involved persuading the jury to reject the alternative to retaliation as a possible cause of his being fired that was put forward by the Club—that he had committed the cardboard faux pax and other waiterly atrocities.

But the instruction, although nonsense, was harmless nonsense. If the jury believed Avitia's version of events—that his supervisor in effect ordered him to deny that he had

worked overtime, had turned cold toward him when he disobeyed the order, and then had trumped up disciplinary infractions to provide pretexts for firing him—it was bound to return a verdict for him, while if it believed the Club's version it was bound to return a verdict against him. The erroneous instruction did not tell the jury whom to believe, and so is unlikely to have influenced the verdict. It was thoroughly superfluous.

The next challenge to the instructions brings us into the domain of damages, an endemic problem area in litigation in our circuit. *Transcraft, Inc. v. Galvin, Stalmack, Kirschner & Clark*, 39 F.3d 812, 818–21 (7th Cir.1994); *Chronister Oil Co. v. Unocal Refining & Marketing*, 34 F.3d 462, 464–66 (7th Cir.1994). The instruction permitted the jury to award, as damages for retaliation, compensation not only for Avitia's "financial losses" but also for his "pain, suffering, and physical and emotional distress." The instruction erred in referring to "pain" and to "physical" distress, since there was no evidence of either. But of this error the Club does not complain, making it another example of harmless instructional superfluity.

■ The basic loss for which the overtime provisions of the Fair Labor Standards Act are intended to compensate a plaintiff is, of course, the plaintiff's loss of the overtime pay to which the Act entitles him. The jury assesses the loss, and unless the judge exercises the power of lenity to which we referred in discussing Diane Larsen's case he tacks on an equal amount as liquidated damages. Ever since a 1977 amendment to the Fair Labor Standards Act, however, the jury has also been authorized to award, though only in retaliation cases, *Moskowitz v. Trustees of Purdue University*, 5 F.2d 279, 284 (7th Cir.1993), all appropriate legal and equitable relief. 91 Stat. 1252, amending 29 U.S.C. § 216(b). This includes the various types of damages awarded in common law cases. Cf. *Travis v. Gary Community Mental Health Center, Inc.*, 921 F.2d 108, 111–12 (7th Cir.1990). And common law damages are intended (with various immaterial limitations) to place the plaintiff in the position he would have been in had the defendant not infringed his rights. *Chronister Oil Co. v.*

*Unocal Refining & Marketing, supra*, 34 F.3d at 464–65. In a case of retaliation, to award the plaintiff merely the overtime pay that he lost would be no remedy at all for the losses, both pecuniary and nonpecuniary, caused by the firing itself as distinct from the violation of the overtime provisions that had precipitated the firing. Granted, this is a bit of an overstatement. The unamended statute did provide for the award of double damages, and the amendment did not eliminate this feature. We return to this point at the end of the opinion.

■ The Club complains not about the wording of the instruction or about the principle just explained, but about a lack of warning that the question of nonpecuniary losses would be submitted to the jury. The only forms of damages sought in the original complaint on behalf of Avitia and the other discharged plaintiffs were backpay and liquidated damages—or in the first, or second, or third, or fourth, or fifth amended complaint. Finally, in a sixth amended complaint, full compensatory damages were sought but the judge refused to allow the complaint to be filed because of Avitia's tardiness in seeking the inclusion of this additional claim for relief. The ruling, or at least its ground, is puzzling. A plaintiff is not required to itemize his damages claims in his complaint. On the contrary, the rules entitle him to a judgment that grants him the relief to which he is entitled even if the complaint failed to ask for that relief. Fed.R.Civ.P. 54(c). True, there is an exception: Fed.R.Civ.P. 9(g) requires that the complaint plead "special damage." These are damages that are unusual for the type of claim in question—that are not the natural damages associated with such a claim. *Moore v. Boating Industry Associations*, 754 F.2d 698, 716–17 (7th Cir.1985); *Smith v. DeBartoli*, 769 F.2d 451, 453 n. 2 (7th Cir.1985). Damages for personal injury are unusual in commercial cases, normal in tort cases; lost profits are normal in contract cases, unusual in personal-injury tort cases. Perhaps emotional distress is a sufficiently unusual concomitant of wrongful discharge to bring Rule 9(g) into play. We need not decide. It was not the ground of Judge Norgle's ruling. And whether the ruling was

right or wrong is immaterial; its effect was that the parties went into the trial not expecting nonpecuniary losses to be at issue. Yet at the trial Avitia was permitted, over the Club's objection, to reply to his lawyer's question about how he had felt when he was fired. This was his answer:

> How I felt. I felt like the Sears Tower [the Metropolitan Club is in the Sears Tower] was falling on top of me. Thirteen years working in this place from the age of 23 to 36 I gave my best years to this place, and I was thrown like a piece of paper, piece of garbage at the end. It took three months for these people to get rid of me. It took me thirteen years to get to the top. At the end my work wasn't good enough.
>
> Until now I can feel that. And I remember that day I was speechless. I went home. That day I was lucky my wife wasn't there because I was crying. This job for me was first. My family was second. All of my energies went to this job. I never was late for thirteen years to this job. If I did call five days sick to this place for thirteen years, it is a lot. My best years were gone in this place.

This was the only evidence about a possible nonpecuniary loss from the retaliatory firing. The Club's lawyer did not cross-examine Avitia about this portion of his testimony. At the instructions conference Avitia's lawyer tendered the instruction we quoted earlier about "pain, suffering, and physical and emotional distress." The Club's lawyer objected, arguing that had he known that damages for nonpecuniary loss were being sought he would have cross-examined Avitia—might even have invoked Rule 35 of the Federal Rules of Civil Procedure and sought a medical examination of Avitia. The judge acknowledged having excluded such damages from the case but said he had changed his mind, and he gave the instruction.

■ There are two issues. The first is whether the doctrine of law of the case precluded the judge from changing his ruling. The second is whether the Club was prejudiced by his doing so. The issues turn out to be related, or perhaps even the same. The doctrine of law of the case establishes a presumption that a ruling made at one stage of a lawsuit will be adhered to throughout the suit. *Messinger v. Anderson*, 225 U.S. 436, 444, 32 S.Ct. 739, 740, 56 L.Ed. 1152 (1912) (Holmes, J.); *Williams v. Commissioner*, 1 F.3d 502, 503–04 (7th Cir.1993); 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4478; pp. 789–90 (1981). But it is no more than a presumption, one whose strength varies with the circumstances; it is not a straitjacket. *Philips Medical Systems International B.V. v. Bruetman*, 8 F.3d 600, 603 (7th Cir.1993). One of the circumstances is the hierarchical relation between the court that rendered the questioned ruling and the court asked to reconsider it. If the original ruling was by a higher court, the lower court will be required by the most elementary sense of stare decisis to adhere to the ruling unless the reasons for departure are truly compelling, such as a contrary ruling by a still higher court. *Cole Energy Development Co. v. Ingersoll–Rand Co.*, 8 F.3d 607, 609 (7th Cir.1993). But if the ruling in question was by the same court (and regardless of whether the same judge or panel or a previous judge or panel of that court made the ruling), the duty of adherence is less rigid. A judge may reexamine his earlier ruling (or the ruling of a judge previously assigned to the case, or of a previous panel if the doctrine is invoked at the appellate level) if he has a conviction at once strong and reasonable that the earlier ruling was wrong, and if rescinding it would not cause undue harm to the party that had benefited from it. *Arizona v. California*, 460 U.S. 605, 618 n. 8, 103 S.Ct. 1382, 1391 n. 8, 75 L.Ed.2d 318 (1983).

■ Judge Norgle's about face on the recovery of damages for nonpecuniary loss corrected what was undoubtedly an error, for we have seen that such damages are recoverable in suits under the Fair Labor Standards Act for retaliation. The issue of prejudice is more difficult. The Metropolitan Club was not on notice that the jury might be instructed that it could award damages for nonpecuniary loss, and so it had no reason to cross-examine Avitia on the portion of his testimony that we quoted, or to introduce its own evidence concerning the effect of the discharge on Avitia's emotions. But this lack of

notice could be prejudicial only if there were some way in which the Club might have parried the testimony. It has been unable to suggest a plausible parry. The suggestion that it might have sought a medical examination of Avitia is preposterous. Avitia did not testify that being fired made him ill or inflicted any physical or mental symptom that might show up on a medical examination. And there was certainly no basis in his testimony for an inference that his distress at being fired was a product of insanity. Nor in all likelihood would that have made a difference. In a statutory tort case as in a common law tort case, the "eggshell skull" rule prevails, so it is no defense to an award of full damages that the plaintiff's injury was amplified by a preexisting condition for which the defendant was not responsible. *Lancaster v. Norfolk & Western Ry.*, 773 F.2d 807, 822 (7th Cir.1985); *Jordan v. Atchison, Topeka & Santa Fe Ry.*, 934 F.2d 225, 228–29 (9th Cir.1991); *Pierce v. Southern Pacific Transportation Co.*, 823 F.2d 1366, 1372 n. 2 (9th Cir.1987); *Williamson v. Handy Button Machine Co.*, 817 F.2d 1290, 1294 (7th Cir.1987).

And what would cross-examination have brought out? The Club does not claim to have had or to have been able to obtain impeaching material to use in rebuttal or cross-examination, such as that Mrs. Avitia had in fact been at home when Avitia came home after being fired or that Avitia's best friends had noticed no change in his mood. Lacking such evidence—and, we repeat, the Club does not argue that it might have obtained such evidence had it known what was coming—the Club's best strategy was to ignore Avitia's testimony about the emotional consequences of his being fired—testimony that amounted to a single answer, occupying fourteen lines of transcript, to a single question—rather than give him a chance to tug even harder on the jurors' heartstrings by elaborating his testimony in answer to a cross-examiner.

 We are speculating; but it was the Club's burden to rein in our speculations by an offer of proof. So far as we are able to judge from the record as it stands, Avitia's lawyer, by asking the single question how Avitia had felt when he was fired, put on

(whether deliberately or inadvertently) so minimalist a case of nonpecuniary loss—a case so modest, so lacking in detail or structure—that there really was no way to meet it, other than to ignore it, unless the Club could obtain helpful evidence from Avitia's wife or other intimates, which it does not suggest it could have done. The Club was harmed, but not by surprise if there was nothing it could have done had it been forewarned. In these unusual circumstances, we conclude that the district judge acted within the contours of the discretionary component of the doctrine of law of the case when he decided to allow the jury to consider an element of damages that the defendant had not had a chance to contest at trial.

 A related question is whether the evidence of damages was adequate to support the jury's verdict. The jury awarded Avitia $42,000 in backpay and $21,000 in compensation for nonpecuniary loss, and let us start with the second. The Club argues that the testimony of Avitia that we quoted, which is the only evidence on which the jury could have based the award of the $21,000, does not, even if fully credited, establish emotional suffering grave enough to warrant any award of damages. (Why, he didn't even lose any sleep, as the Club's lawyer reminded us indignantly at the argument.) This contention rests on a confusion between two issues, the severity of emotional distress that is necessary to state a claim for intentional infliction of emotional distress and the amount of proof required to establish damages for emotional distress in a suit charging a different tort, here the statutory tort of retaliating against a person who complains about a violation of the Fair Labor Standards Act. Concerns about the subjectivity of the tort of intentional infliction of emotional distress have persuaded the courts to require that the plaintiff prove that the distress inflicted was severe; and while the exact height of the threshold of required severity is unclear, it plainly is not reached by this case. See *Bristow v. Drake Street Inc.*, 41 F.3d 345, 349–50 (7th Cir.1994). But this is not a case of intentional infliction of emotional distress. It is a case of wrongful discharge where the governing statute entitles the

plaintiff to recover damages for the full consequences of the discharge including—we have held specifically—emotional distress. *Travis v. Gary Community Mental Health Center, Inc., supra,* 921 F.2d at 111–12; *Soto v. Adams Elevator Equipment Co.,* 941 F.2d 543, 551–52 (7th Cir.1991). The distress need not cross some threshold of severity to be a basis for damages. This is true in the vast majority of cases in which common law damages are recoverable. It is only with respect to the tort of inflicting emotional distress that a threshold of severity must be crossed.

 Yet obviously the slighter the emotional distress, the lower the ceiling on a reasonable award of damages; and we take seriously the responsibility of an appellate court to review the sufficiency of the evidence to support the award of damages as well as the sufficiency of the evidence to support the finding of liability. *Fleming v. County of Kane,* 898 F.2d 553, 561–62 (7th Cir.1990); *Taliferro v. Augle,* 757 F.2d 157, 162 (7th Cir.1985). An award of $21,000 is too much for a moment's pang of distress at being fired, even distress enough to make a grown man cry who believes—and we do not mean to criticize such a belief—that crying is shameful in a man. There is more here but our only point is that damages must be proportioned to injury, so that the slighter the injury the smaller must be the award of damages if the plaintiff is to oppose successfully a motion for a new trial or for a remission of damages (remittitur). We have no reason to question Avitia's sincerity but we would be naive to doubt that if the award of $21,000 for the emotional distress caused him by being fired is sustained, plaintiffs in subsequent cases of retaliatory discharge will be sure to include a passage of testimony—always moving and often as a practical matter irrefutable—modeled on Avitia's. He will have furnished the script for countless plaintiffs in suits for wrongful discharge. Twenty-one thousand dollars will tend to become the floor for the award of nonpecuniary damages in such cases.

We said and repeat that there is more than the momentary pang, the momentary breaking down and crying, in this case. Avitia testified that "until now I can feel that." He was testifying several years after he had been fired. Because he had worked for the same employer for so many years, it is plausible that he would have been deeply distressed by what he regarded, or at least persuaded the jury that he regarded, as an unjustified and unjust discharge. We do not think that it was unreasonable for the jury to award him some damages for this hurt, even considerable damages; but $21,000 is too much. Judges and juries must not be casual with other people's money.

Avitia found another job as a banquet captain, with the Hilton Hotel, three months after he was fired. So far as appears, his wages were comparable to his wages at the Metropolitan Club and although it is likely that as a new employee he had fewer fringe benefits, no evidence to that effect was introduced. It is true that shortly after getting the job with the Hilton he quit to take care of a sick child, and when he tried to reenter the job market the demand for banquet captains had declined and he was forced to take a greatly inferior job in a geriatric facility. But he does not contend that the Metropolitan Club is responsible for his son's becoming ill, and it is sheer speculation that had he still been employed by the Club he would not have resigned his job to take care of his son. Even if we knew that Avitia would not have quit his job at the Club in order to take care of his son (maybe as an employee of the Club he had had sufficiently generous health benefits to have enabled his son to obtain enough professional help not to need his father's personal care), there might be a question of the Club's liability for so remote and unforeseeable a consequence of the discharge, though we need not pursue that issue. We must treat this as a case in which a person who is fired is able to land a comparable replacement job in three months; and in these circumstances a protracted bitterness from the firing, especially in an era in which job insecurity has become the norm in American business, cannot be presumed and is not adequately established by Avitia's brief testimony. As we said, it is not implausible that he should have been deeply upset at losing a job he had held for so many years; but the deep upset had to be proved, and was not.

We conclude that a remittitur of $10,500 in damages for emotional distress (half the award) is necessary to keep the award of these damages within the limits of the rational. *Taliferro v. Augle, supra*, 757 F.2d 157, 162; cf. *Cygnar v. City of Chicago*, 865 F.2d 827, 848 (7th Cir.1989); *Peoples Bank & Trust Co. v. Globe International Publishing, Inc.*, 978 F.2d 1065, 1070–71 (8th Cir.1992); *Spence v. Board of Education*, 806 F.2d 1198, 1201 (3d Cir.1986).

The Metropolitan Club also contests the award of $42,000 in backpay. Avitia testified that the difference between what he earned at the Metropolitan Club and his wages in the years after he was fired was only $25,500. A comparison between the earnings shown on his tax returns during the damages period and the earnings shown on his tax returns for the preceding two years suggests a maximum loss of only $32,783. The real loss attributable to the retaliatory discharge was probably less than either of these figures, because it appears that most of Avitia's loss of earnings was due to his decision to leave the employ of Hilton to take care of his son. But the Club has made no issue of this in regard to lost earnings.

The Club's problem in challenging this part of the award is that having (in hindsight imprudently) refused the offer of Avitia's lawyer to stipulate to damages of $25,500, it failed to present any damages evidence of its own or even to suggest to the jury a figure for damages in the event that the jury found that Avitia had indeed been fired in retaliation for complaining about not receiving overtime pay. When a defendant goes for broke, staking its all on convincing the jury to award zero damages—fearing otherwise a compromise verdict—it risks being hit with a verdict much larger than if it had offered the jury an alternative estimate of damages to the plaintiff's. It should not expect the appellate court to relieve it from the consequences of its gamble. Despite Avitia's testimony, which the Club does not contend was the equivalent of a stipulation or binding admission that placed a ceiling on the damages the jury could award, Avitia's lawyer asked the jury to award Avitia much more. The jury did not heed the request;

instead it decided to figure out Avitia's damages on its own. It requested from the judge and was lent a calculator, and apparently it pored over Avitia's tax returns in coming up with the figure of $42,000. Perhaps it thought that since Avitia's salary at the Metropolitan Club had risen over the course of his thirteen years of employment, he would have received additional raises had he remained in the Club's employ. The difference between the loss shown on the tax returns and the jury's award, a difference of less than $10,000, is at the outer bounds of what a rational jury could have done with the materials at its disposal. But it does not exceed those bounds and we are not disposed, therefore, to order a new trial or a remittitur with respect to the award of damages for lost wages.

The last issue is also one of relief, and it arises from Avitia's cross-appeal. He argues that the district judge erred in refusing to order him reinstated in Metropolitan's employ. Most cases involving the question of a district judge's equitable discretion to deny a motion for reinstatement of a wrongfully discharged employee have arisen under the civil rights laws rather than under the Fair Labor Standards Act, and Avitia argues unconvincingly from minute differences in the wording of the remedial provisions of that Act and the Age Discrimination in Employment Act (the remedial provisions of which were modeled on those of the earlier Act) that the judge's discretion is more limited under the FLSA. Compare 29 U.S.C. § 216(b) (FLSA) with 29 U.S.C. § 626(b) (ADEA). What is true but has no significance in this case is that the reinstatement of an hourly-wage worker is less likely to be infeasible than the reinstatement of a managerial or professional employee, and that the former is more likely to be a plaintiff in an FLSA case and the latter in an ADEA case. The Club persuaded the district judge that because a banquet captain deals directly with the Club's members and their guests (the captain being, in fact, the interface between the waiters and other banquet staff and the members and guests), because Avitia had been "difficult" when he worked for the Club, because there are no vacancies in the ranks of the banquet captains (so that the Club would have to "bump"

an innocent employee to make room for Avitia), and because Avitia is still angry with the Club for firing him, he should not be reinstated.

■ We cannot declare this an unreasonable judgment. Although a judge who makes equitable determinations in a case in which the plaintiff's legal claims have been tried to a jury is bound by any factual findings made or inescapably implied by the jury's verdict, *Snider v. Consolidation Coal Co.*, 973 F.2d 555, 559 (7th Cir.1992); *Williamson v. Handy Button Machine Co.*, supra, 817 F.2d at 1293–94; *Hunter v. Allis–Chalmers Corp.*, 797 F.2d 1417, 1421 (7th Cir.1986), we do not think the jury's decision to accept the retaliatory-discharge claim inescapably implied a finding that Avitia had not been in some sense a "difficult" employee, albeit that was not the reason he was fired. Plaintiff Larsen, we note, denied to the auditor that she had worked overtime. This was the predictable response of an "easy," a complaisant (or intimidated), employee. Maybe by cooperating with the auditor Avitia demonstrated a lack of abject loyalty that might be read as the sign of a "difficult" personality. Of course a firm cannot use its own anger at the employee against whom it has retaliated to oppose reinstatement, *McKnight v. General Motors Corp.*, 908 F.2d 104, 116 (7th Cir.1990); *Coston v. Plitt Theatres, Inc.*, 831 F.2d 1321, 1331 (7th Cir.1987), but Judge Norgle knows that, and we cannot say that he committed a clear error in deciding that the relationship between Avitia and the Metropolitan Club was so poisoned, and the poison so harmful to the Club's legitimate concerns, as to make reinstatement an inappropriate remedy. This kind of judgment is within the scope of a judge's discretion in formulating equitable relief. *Brock v. Casey Truck Sales, Inc.*, 839 F.2d 872, 881 (2d Cir.1988). The reinstatement of a disaffected employee can harm innocent third parties, such as fellow workers and consumers, as well as the employer itself.

■ Avitia's lawyer argues with great vigor that such reasoning denies his client the full relief to which the law entitles him. He is wrong. For when reinstatement is infeasible, the plaintiff is free to seek in lieu of that remedy an award of "front pay," designed to put him in the identical financial position that he would have occupied had he been reinstated. *McNeil v. Economics Laboratory, Inc.*, 800 F.2d 111, 118 (7th Cir. 1986). We cannot find any case in which front pay has been awarded under the Fair Labor Standards Act, but we cannot think of any reason why it cannot be done in a retaliation case under that act since the victim of retaliation is expressly entitled to all legal and equitable relief that may be appropriate.

■ Front pay is the difference (after proper discounting to present value) between what the plaintiff would have earned in the future had he been reinstated at the time of trial and what he would have earned in the future in his next best employment. *McKnight v. General Motors Corp.*, supra, 908 F.2d at 116. The availability of front pay supports a policy of *not* compelling reinstatement in circumstances where such debilitating frictions between employer and employee can be anticipated that the court might have to exercise continuing supervision over the employment relationship for many years. *McNeil v. Economics Laboratory, Inc.*, supra, 800 F.2d at 118. Equitable remedies usually and here are costly to administer because they do more than transfer a lump sum from defendant to plaintiff, the standard "legal" remedy. The costs include not only the time and money of litigants and judges devoted to administering a continuing remedy as opposed to the one-time remedy of a lump-sum award of damages, but also the costs in reduced productivity caused by locking parties into an unsatisfactory employment relation, which is the industrial equivalent of a failed marriage in a regime of no divorce. Just as a divorce can hurt third parties (the children), so a reduction in an enterprise's productivity can hurt third parties, namely workers and consumers. The effect of equitable remedies on third parties, not to mention on the courts that must take the time to supervise them, is the practical reason why there is no "right" to an equitable remedy, why the plaintiff's claim to such a remedy may have to yield to competing considerations. *Hoover v. Wagner*, 47 F.3d

845, 850 (7th Cir.1995); *Okaw Drainage District v. National Distillers & Chemical Corp.*, 882 F.2d 1241, 1248 (7th Cir.1989).

But especially in cases in which the entire costs of the equitable remedy are borne by the employer, the social costs of the remedy may be avoided by corrective transactions. Cf. R.H. Coase, "The Problem of Social Cost," 3 *J. Law & Econ.* 1 (1960). Suppose that reinstatement would be worth $100,000 to the employee but would cost the employer $150,000 because of a negative effect of reinstatement on the employer's productivity; in contrast, an award of $100,000 would cost the employer only $100,000 while benefiting the employee to the tune of $100,000. The substitution of front pay for reinstatement would produce a savings in social costs of $50,000— yet if front pay were unavailable, the employer might buy out the employee's right of reinstatement, since at any price between $100,000 and $150,000 both parties would be made better off by such a buy-out. Front pay may still be the socially preferable form of relief, because it avoids the need for a tricky transaction. So when it is feasible the judge is not to be faulted for choosing it.

But we are wandering from the point. Avitia did not seek an award of front pay. That was a tactical judgment from the consequences of which we cannot relieve him. We add as a detail possibly important in future cases that where double damages are awarded (as here) *and* front pay is also sought, the judge should be careful to make sure that the award of both sorts of relief does not result in overcompensation. Cf. *McNeil v. Economics Laboratory, Inc., supra*, 800 F.2d at 118. Since reinstatement and double damages are normally awarded in the same case, and front pay is a substitute for reinstatement, there is no rule against awarding both double damages and front pay in the same case. But the judge must guard against being overly generous in computing front pay, lest the result be a total award greater than the statute contemplates.

The judgment of the district court is affirmed except that there must be a new trial on Avitia's damages for emotional distress unless, within fourteen days from the date of

this opinion, he signifies to the district court his election to remit one-half of those damages.

So Ordered.