In the

# United States Court of Appeals

### For the Seventh Circuit

Nos. 16-2336, 16-2339

TRACY L. WINK,

*Plaintiff-Appellee/Cross-Appellant*,

*v.*

MILLER COMPRESSING COMPANY,

*Defendant-Appellant/Cross-Appellee*.

Appeals from the United States District Court for the
Eastern District of Wisconsin.
No. 2:14-cv-00367-NJ — **Nancy Joseph**, *Magistrate Judge*.

ARGUED DECEMBER 1, 2016 — DECIDED JANUARY 9, 2017

Before POSNER, RIPPLE, and ROVNER, *Circuit Judges*.

POSNER, *Circuit Judge*. In this suit by the plaintiff, Wink, against her former employer, Miller Compressing Company, a three-day jury trial ended with a verdict in favor of Wink on three of her claims: retaliation in violation of the Family and Medical Leave Act (FMLA), violation of Wis. Stat. § 109.03 (a wages statute), and breach of contract. But the jury returned a verdict for Miller on Wink's fourth claim, which was that Miller had interfered with her rights under

the FMLA. Miller moved for judgment as a matter of law on the ground that no reasonable jury could have found enough evidence to justify its verdict. The district judge denied the motion, precipitating this appeal by Miller. Wink has cross-appealed, seeking a higher award of attorneys' fees for her successful suit.

Wink had been employed in Miller's order-processing department since 1999 (order processing includes paper-work, which was what Wink did, and other procedures involved in the distribution of products, such as recycled scrap metal, which Miller sells), and Miller had granted Wink's request in July 2011 for intermittent FMLA leave through July 2012 to take her autistic two-year-old son to medical appointments and therapy. FMLA entitles eligible employees to take up to 12 workweeks of leave during any 12-month period for qualifying reasons, one of which is to care for a child who has a serious health condition. 29 U.S.C. §§ 2612(a)(1), (a)(1)(C).

In February 2012, Wink's son was expelled from day care, which he had been attending for two days a week, because of his aggressive behavior, a product of his autism. Wink asked her employer's human resources department to grant her FMLA leave to enable her to work from home two days a week, which would give her enough free time to take care of the child. (Wink's mother was able to watch the toddler the remaining three workdays.) FMLA does not cover working at home, *Taylor-Novotny v. Health Alliance Medical Plans, Inc.*, 772 F.3d 478, 498 (7th Cir. 2014), but working at home would enable Wink to spend several hours a day caring for her son—indeed she might have been entitled to two full days of FMLA leave per week to care for him at home.

Human resources agreed to a hybrid arrangement that would require Wink to inform the company of the number of hours she worked each day at home, a computation that would be made by subtracting from the normal eight-hour workday the hours in which she was taking care of her son—hours of FMLA leave time for which the company would not be required to compensate her.

Although Wink was an experienced and highly valued employee, in the summer of 2012 the Miller company, experiencing serious financial problems, decided that none of its employees would be allowed to work at home during the week; all of them would be required to work a full 5-day 40-hour week on the company's premises. On a Friday in July the company gave Wink an ultimatum: she had to show up on the coming Monday and work eight hours a day (8 a.m. to 4 p.m.) five days that week, as well as in all subsequent weeks, in the office. When told this, she started to cry and said she "knew that it was going to be nearly impossible for [her] to find day care over the weekend by Monday." The jury was entitled to believe both that she had said that and that it was true, and that the reason she needed day care—her son's autism—was also true, but that if she couldn't find a day-care service willing to take him (because he's such a difficult child) at a price she could afford, she'd have to provide the care, or at least some of it (maybe she could obtain and afford very limited day care, or get help from family), herself, when the child was awake and hyperactive.

But the human resources officer to whom she explained all this told her falsely that the FMLA covers leave from work *only* for doctors' appointments and therapy. That was on Friday; Wink returned to the office on Monday morning

and explained that she'd been unable to find day care for her son over the weekend. The human resources officer told her that the first day she didn't work in the office, full time, she'd be considered a "voluntary quit." Because Wink had to return home to take care of her child, not having been able to obtain day care for him over the weekend, she left the office, never to return to work for Miller. For that same Monday, shortly after she'd gone home to take care of her autistic child, the human resources officer ordered Wink's termination processed "today" (i.e., Monday) and that it reflect that her last day of work had been the previous Friday.

The Family and Medical Leave Act entitled Wink to take leave necessary to take care of a very difficult (at times violent) sick child. 29 U.S.C. § 2612(a)(1), (a)(1)(C); 29 C.F.R. § 825.124. Wink proved, and the jury determined, that the company had retaliated against her for asserting her FMLA right to take leave necessary to enable her to take care of her sick child for several hours two days a week. As she was a valued and experienced employee who had worked for the company at home two days a week since February without the company's complaining, the company had no compelling reason to fire her. Maybe, because of its financial troubles, it would have had to lower her wage, on the plausible supposition that an employee is likely to do less work for her employer at home than in the office—in Wink's case if only because her child might take more than the allotted time (two hours a day) to be cared for by her. But that is not argued.

The best inference, or at least an inference that a reasonable jury could draw, was that Wink's superiors were angry with her for requesting to be allowed to stay home (albeit

working part of the day) two days a week, though she'd been doing that since February to the satisfaction of the employer. Hence the phony line that FMLA can't be used to authorize leave to take care of a very sick child even when obtaining day care for the child is difficult or even impossible because of the child's particular ailment—autism that in this case manifested itself at times in violent behavior. The FMLA is explicit that an eligible employee (which Wink is conceded to have been) is entitled to take up to 12 workweeks of unpaid leave per year in order to care for a family member with a serious health condition, including a child with such a condition. 29 U.S.C. §§ 2611(11), 2612(a)(1)(C).

In addition to actual damages based on the employee's loss of wages, the violation of this right entitles the employee to "liquidated damages equal to the sum of the amount" of the loss plus interest, unless the employer can show that it acted in good faith. 29 U.S.C. § 2617(a)(1)(A)(iii). Because the liquidated damages are thus equal to the amount of damages actually sustained, the employee can receive twice his or her actual damages. See, e.g., *Shea v. Galaxie Lumber & Construction Company, Ltd.*, 152 F.3d 729, 733 (7th Cir. 1998); *Avitia v. Metropolitan Club of Chicago, Inc.*, 49 F.3d 1219, 1223 (7th Cir. 1995). Miller argues that it acted in good faith, and therefore shouldn't have to pay double damages, but the district court correctly rejected that argument. Human resources' reaction to Wink's plight could reasonably be found to be retaliation against her for asking for FMLA leave for anything other than a doctor's appointment or therapy (it's not clear what exactly human resources meant by "therapy," but presumably it meant professional therapy rather than a mother's care). Wink's employment contract with Miller provided that a termination of it "without a reason arising

from Employee's own action or inaction" was a termination without cause that obligated Miller either to give her three weeks' advance notice of termination or continue paying her wages for the three weeks. The jury was within its rights in finding that Miller had fired Wink without cause, or advance notice, and therefore had broken its contract with her and violated the Wisconsin wage statute, Wis. Stat. § 109.03, by not paying her three weeks of wages. That action by Miller gave Wink a further right to damages beyond that created by the FMLA.

One issue remains to be considered. The FMLA entitles a winning plaintiff to an award of attorneys' fees. 29 U.S.C. § 2617(a)(3). A presumptive award is calculated by multiplying the hourly fees charged by the plaintiffs' attorneys by the number of hours they had worked on the case. But adjustments are common, and in this case the district judge decided to reduce the award of attorneys' fees to Wink by 20 percent because she had failed to persuade the jury to find that the defendant had interfered with her FMLA rights, which as mentioned earlier is a separate violation from retaliation. Wink's cross-appeal challenges the district judge's ruling persuasively. It's not as if her lawyers had dropped the ball in arguing that Miller had not only retaliated against her for claiming her FMLA rights but had also interfered with her efforts to assert them. The two FMLA breaches are very similar, so it was prudent for the lawyers to press both in order to reduce the likelihood of a total defeat. And because the claims were so similar and based largely on the same facts, the marginal cost of presenting the interference claim to the jury was slight.

We conclude that the judgment of the district court must be affirmed except for the judge's 20 percent reduction in the attorneys' fees awarded the plaintiff; we remand that ruling with directions to rescind it and award the plaintiff her full attorneys' fees.