# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 08-1620

DAVID ZBARAZ, M.D., ALLAN G. CHARLES, M.D., AND
MARILYNN C. FREDERIKSEN, M.D.,

*Plaintiffs-Appellees*,

*v.*

LISA MADIGAN, Attorney General of Illinois, AND
ANITA ALVAREZ, State's Attorney of Cook County,
Illinois, in their official capacities,

*Defendants-Appellants.*

No. 08-1782

DAVID ZBARAZ, M.D., ALLAN G. CHARLES, M.D., AND
MARILYNN C. FREDERIKSEN, M.D.,

*Plaintiffs-Appellees*,

*v.*

LISA MADIGAN, Attorney General of Illinois, AND
ANITA ALVAREZ, State's Attorney of Cook County,
Illinois, in their official capacities,

*Defendants-Appellees*,

APPEAL OF:

STEWART UMHOLTZ AND EDWARD DETERS,

*Appellants.*

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 84 C 771—**David H. Coar**, *Judge*.

ARGUED JANUARY 14, 2009—DECIDED JULY 14, 2009

Before CUDAHY, KANNE and TINDER, *Circuit Judges*.

CUDAHY, *Circuit Judge.* There is no dispute that minors, like adult women, have a constitutional right to an abortion that may not be blocked by significant obstacles from the State. Nor is there any doubt that the State has an important interest in the welfare of its children that justifies regulation of the abortion of minors that would not be upheld if applied to adult women.

This case is merely the latest in a string of facial challenges to one such regulation, the Illinois Parental Notice of Abortion Act of 1995. Because we believe that this iteration of the notice statute, and the Illinois Supreme Court rule adopted to implement it, respect the Supreme Court's precedent regarding parental involvement laws, we uphold the Illinois notice act as constitutional on its face.

I

A

The question presented here is a narrow one: whether the Illinois Parental Notice of Abortion Act of 1995, 750 ILCS 70/1 *et seq.*, is facially invalid because its judicial bypass provisions lack language authorizing a state court judge to issue an order allowing an immature minor to consent to an abortion without notifying her parents, where an abortion without notice would be in her best interests. This question requires unpacking. We start with the language of the statute.

The relevant sections of the notice act are set forth in full in the appendix. The act requires "the physician or his or her agent" to provide "at least 48 hours actual notice to an adult family member of the pregnant minor or incompetent person[1] of his or her intention to perform the abortion," unless the physician or agent has received a certified written statement from a referring physician that such notice has been provided, or notice is not possible after reasonable effort, in which case forty-eight hours "constructive notice" (defined as "notice by certified mail to the last known address of the person entitled to notice") is sufficient. §§ 10, 15.

---

[1]  For ease of reference, we use "minor" or "petitioner" to refer to both minors and incompetent persons under the act. This opinion and its analysis does not depend upon the meaning of the term "incompetent," and therefore we take no position on this state-law question.

The act provides that parental notice shall be waived in a number of circumstances, § 20(1)–(5), including, as relevant here, if the minor participates in a judicial bypass procedure as outlined in § 25 of the act. A woman seeking a judicial bypass from notice "may petition any circuit court for a waiver of the notice requirement and may participate in proceedings on her own behalf." § 25(b). In addition, the bypass court is required to appoint a guardian ad litem for the minor, to advise her that she has a right to court-appointed counsel and to provide her with counsel upon her request. *Id*. Court proceedings under the act "shall be confidential and shall ensure the anonymity of the minor." § 25(c). The minor "shall have the right to file her petition using a pseudonym or using solely her initials." *Id*. The act further provides that judicial bypass proceedings shall be given precedence over other pending matters "to the extent necessary to ensure that the court reaches a decision promptly." *Id.* The court shall rule and shall issue written findings of fact and conclusions of law within forty-eight hours of the time the petition is filed, unless the minor requests additional time. *Id*. If the court fails to rule within the forty-eight-hour period, the petition shall be deemed to have been granted and the notice requirement shall be waived. *Id.*

The heart of the act's bypass procedure is § 25(d), which provides:

> Notice shall be waived if the court finds by a preponderance of the evidence either:

> (1) that the minor or incompetent person is sufficiently mature and well enough informed to decide intelligently whether to have an abortion, or

> (2) that notification under Section 15 of this Act would not be in the best interests of the minor or incompetent person.

The judicial bypass court "shall issue written and specific factual findings and legal conclusions supporting its decision and shall order that a confidential record of the evidence and the judge's findings and conclusions be maintained." § 25(e). The act requires that an expedited confidential appeal be available, as the Illinois Supreme Court provides by rule, to any minor to whom the circuit court has denied a waiver of notice. § 25(f). However, "[a]n order authorizing an abortion without notice shall not be subject to appeal." *Id*. Finally, the act "respectfully request[s]" the Illinois Supreme Court "to promulgate any rules and regulations necessary to ensure that proceedings under [the] Act [be] handled in an expeditious and confidential matter." § 25(g).

A physician who violates the notice act is to be referred to the Illinois State Medical Disciplinary Board, 225 ILCS 60/23(A)(4) which may recommend suspension or revocation of the physician's medical license, 225 ILCS 60/22(A)(40), or imposition of civil penalties of up to $5,000 per violation, 225 ILCS 60/22(C).

B

The plaintiffs filed this lawsuit in the district court in 1984, claiming that an earlier iteration of the notice act, the Parental Notice of Abortion Act of 1983, was constitutionally deficient on its face. The district court certified a plaintiff class of physicians and a defendant class of state's attorneys,[2] but ultimately held that the 1983 act was unconstitutional because it failed to ensure a minor's anonymity or to provide for an expedited appeal. *Zbaraz v. Hartigan*, 584 F. Supp. 1452 (N.D. Ill. 1984). We affirmed and continued the injunction so that the Illinois Supreme Court could promulgate rules implementing the 1983 act's judicial bypass procedure in a way that would ensure expedited appeals and anonymity. *Zbaraz v. Hartigan*, 763 F.2d 1532 (7th Cir. 1985). The Illinois Supreme Court later promulgated such a rule, but the district court held that it was insufficient and continued the permanent injunction. *Zbaraz v. Hartigan*, 776 F. Supp. 375 (N.D. Ill. 1991). The Illinois General Assembly then repealed the 1983 act and replaced it with the 1995 act now before us.

---

[2] The certified plaintiff class includes licensed physicians who perform or desire to perform abortions for unemancipated minors and disabled persons in Illinois, both on their own behalves and on behalf of certain of their patients, including minors capable of giving informed consent to an abortion or whose best interests would not be served by notice to both parents of the minor's intent to obtain an abortion. The defendant class includes all state's attorneys of the various counties of Illinois.

On or about June 7, 1995, the plaintiffs amended their complaint to challenge the constitutionality of the 1995 act. The parties agreed to an injunction barring enforcement of the 1995 act until the Illinois Supreme Court promulgated new rules to implement the new act's judicial bypass. Then in February 1996, the district court entered a permanent injunction because the Illinois Supreme Court announced that it would not promulgate any such rules. The permanent injunction order expressly deferred the plaintiffs' constitutional challenges until such time as the Illinois Supreme Court promulgated rules.

Ten years later, in September 2006, the Illinois Supreme Court adopted Rule 303A, entitled "Expedited and Confidential Proceedings Under the Parental Notification of Abortion Act." Rule 303A purports to provide the necessary appeals procedures to implement the judicial bypass, as called for by § 25(g) of the notice act. The rule, set forth in its entirety in the appendix, reiterates that a judicial bypass court shall endeavor to rule at the close of any hearing, but must rule and issue written findings of fact and conclusions of law within forty-eight hours of the time that the petition is filed, weekends and holidays excluded, except at the minor's request for more time. The rule prescribes the content of a petition for appeal and supporting brief, and requires that they be filed within two days (weekends and holidays again excluded) of a circuit court decision denying relief, except that, again, the minor may request more time. After receiving the petition, brief and record on appeal, the appellate court has three work days to "issue a confidential written order." Rule 303A(g). The appellate court shall appoint

counsel for the petitioner at her request, and all proceedings under the rule are to be confidential. Rule 303A(d), (f). The petitioner is to be identified in the petition and in any supporting brief only by her first name and last initial, or by initials only, or by pseudonym. All documents relating to the proceedings shall be sealed, and all notifications of court rulings under the rule may be informal and shall be confidential. Rule 303A(f).

In light of Rule 303A, the defendants filed a motion to dissolve the permanent injunction under Fed. R. Civ. P. 60(b)(5) and (6). The district court denied that motion, as well as a renewed motion, and continued the permanent injunction. The district court found that even with Rule 303A, the 1995 notice act was unconstitutional because it lacked language authorizing bypass courts to issue orders allowing immature minors to consent to abortions without parental notice where an abortion without notice would be in their best interests. The district court explained:

> The 1995 Act authorizes the court to waive parental notification when it is in the "best interest" of the child, but does not authorize a method of consent for the abortion. Thus, under the statute, a "best interest" minor who has waived parental notification is left without a mechanism to obtain consent for the abortion, and thus is in legal limbo.

*Zbaraz v. Madigan*, No. 84 C 771, 2008 WL 589028, at *3 (N.D. Ill. Feb. 28, 2008). Though it is not explicit in the district court's opinion, it is clear from the plaintiffs' briefs below and on appeal that this conclusion is predi-

cated on the following chain of argument: (1) A bypass court will necessarily consider a minor's maturity first and only reach the "best interests" question if it concludes that a minor is too immature to make the abortion decision on her own. (2) Such a finding of immaturity will necessarily be included in the bypass court's decision waiving parental notice because the bypass court is required to "issue written and specific factual findings and legal conclusions supporting its decision." § 25(e). (3) Once a minor has been adjudicated to be immature, she will be unable to consent to an abortion on her own, because of Illinois' common law rule requiring informed consent to all medical procedures. According to the plaintiffs, an immature minor cannot give informed consent. As will appear, we reject each tenet of this line of argument, as well as the district court's holding that the bypass court lacks the authority to issue an order necessary to enforce its judgment that an abortion without parental notice is in a minor's best interests.

The defendants brought this appeal. Hours after the defendants filed their notice of appeal, Illinois State's Attorneys Edward Deters and Stewart Umholtz, represented by the Thomas More Society Pro-Life Law Center, filed in the district court a motion to intervene in the case and a motion to reconsider the judgment. The district court denied both motions, and the proposed intervenors filed a notice of appeal from that order and from the district court's earlier order denying the defendants' renewed motion to dissolve the permanent injunction. We consolidated the appeals of the defendants and the proposed intervenors.

## II

### A

The proposed intervenors argue that we lack jurisdiction over this case because of their timely filed motion to alter or amend the judgment under Fed R. Civ. P. 59, which they argue suspended the defendants' notice to appeal filed earlier on the same day. The proposed intervenors ignore the effect of Fed. R. App. P. 4(a)(4)(B)(i), which provides:

> If a party files a notice of appeal after the court announces or enters a judgment—but before it disposes of any motion listed in Rule 4(a)(4)(A) [including Rule 59 motions]—the notice becomes effective to appeal a judgment or order, in whole or in part, when the order disposing of the last such remaining motion is entered.

This rule means that the defendants' notice of appeal, even if it was properly suspended pending the lower court's disposition of the proposed intervenors' Rule 59 motion, takes immediate effect upon that disposition and has transferred jurisdiction to us.

In any event, the district court properly ruled that it lacked jurisdiction to decide the Rule 59 motion, because the proposed intervenors were not before the court when they filed it. Rule 59 requires that the person or entity filing the motion to alter the judgment be a "party" before the court. The proposed intervenors make two arguments that they are "parties" for Rule 59 purposes. Both arguments fail.

First, they argue that they should have been allowed to intervene under Fed. R. Civ. P. 24. Rule 24 provides that a district court must allow a nonparty to intervene as of right upon the filing of a "timely" motion wherein the nonparty "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Rule 24(a)(2). The district court's decision that the proposed intervenors' motion to intervene was not timely is reviewed for an abuse of discretion. *Larson v. JPMorgan Chase & Co.*, 530 F.3d 578, 583–84 (7th Cir. 2008). Here, the proposed intervenors waited to file their motion to intervene until after the district court had denied two motions to reconsider the ruling continuing the permanent injunction, and until after the defendants had filed their notice of appeal, all of which occurred eleven months after the defendants filed their Rule 60(b) motion, and nearly twenty-five years after the initiation of the litigation. It was not an abuse of discretion for the district court to find that this filing was untimely. Moreover, it would also have been proper to deny the motion to intervene because the existing parties adequately represent the interests of the proposed intervenors. The proposed intervenors are members of the defendant class of Illinois state's attorneys, and they do not argue that there are any factual or legal distinctions that make their interests in this case divergent from the interests of the named class representatives. The proposed intervenors raise the same

objection to the district court's denial of the defendants' Rule 60(b) motion and, in fact, they join in most of the defendants' brief on appeal. We see no reason why Illinois Attorney General Lisa Madigan and Cook County State's Attorney Anita Alvarez cannot adequately represent the proposed intervenors' interests.

Second, the proposed intervenors argue that even if their motion to intervene is properly denied, they should be allowed to bring their Rule 59 motion without formal intervention as unnamed class members, citing *Devlin v. Scardelletti*, 536 U.S. 1 (2002) (holding that unnamed class members who are bound by the terms of a settlement and have objected to the settlement at a fairness hearing have a right to appeal the settlement without formal intervention). But again, the purpose of allowing nonparties to appeal without formal intervention under *Devlin* is to grant those nonparties a forum to assert interests that diverge from those of the named class representative. *See Gautreaux v. Chi. Hous. Auth.*, 475 F.3d 845, 851 (7th Cir. 2007) ("*Devlin* . . . reflects a concern that, without an opportunity to appeal, unnamed class members will have no other recourse than to accept the terms of a settlement and to forfeit further pursuit of their claim."). No such purpose would be vindicated here. Again, the proposed intervenors have not raised divergent interests that only they can adequately represent. Their interests, from all that appears, are in line with those of the Illinois Attorney General and the Illinois State's Attorney. We therefore affirm the district court's order denying the proposed intervenors' motions.

B

This case comes to us from the district court's denial of the defendants' motion to dissolve the permanent injunction barring enforcement of the statute. Federal Rule of Civil Procedure 60(b) provides that "the court may relieve a party or its legal representative from a final judgment, order, or proceeding" if "(5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief." The district court's denial of the Rule 60(b) motion is reviewed for abuse of discretion to determine whether "a significant change in circumstances warrants revision of the [judgment]," *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 383 (1992); *see United States v. Krilich*, 303 F.3d 784, 789-90 (7th Cir. 2002), but the constitutional questions decided by that court are reviewed de novo, *Gonzalez v. O'Connell*, 355 F.3d 1010, 1019 (7th Cir. 2004) (citations omitted).

The district court's February 9, 1996, permanent injunction order, entered by Judge Plunkett, found that Section 25 of the notice act requested the Illinois Supreme Court to promulgate appellate rules to ensure that judicial bypass proceedings under the act would be handled in "an expeditious and competent manner."[3] Judge Plunkett's order reiterated findings made by

---

[3] Under the Illinois Constitution, the Illinois Supreme Court, not the General Assembly, must promulgate rules regarding appellate procedure. Ill. Const. art. VI, § 16.

Judge Will in support of the earlier preliminary injunction. In particular, Judge Plunkett reiterated Judge Will's finding that the act was incomplete and could not be "adjudicated" or implemented until the Illinois Supreme Court promulgated appellate rules. In the preliminary injunction order, Judge Will "deferred any adjudication as to the constitutionality" of the act until the Illinois Supreme Court promulgated such rules. Following Judge Will's order, the Illinois Supreme Court advised the district court, without explanation, that "no additional rules will be promulgated under the 1995 Act." Judge Plunkett therefore concluded that the act "remains incomplete and cannot be implemented," and he permanently enjoined its enforcement without addressing its constitutionality.

It is clear from Judge Plunkett's order that the permanent injunction was meant to be in place only until such time as the Illinois Supreme Court promulgated appellate rules governing judicial bypass proceedings under the act. Now that the Illinois high court has adopted Rule 303A, it is appropriate to address the constitutional questions deferred in the permanent injunction order. Because we find that Rule 303A completes the act, and that the notice statute is otherwise constitutional on its face, "applying [the injunction] prospectively is no longer equitable." Rule 60(b)(5). In other words, "a significant change in circumstances warrants revision of the [judgment]," *Rufo*, 502 U.S. at 383, and the time has come to lift the permanent injunction.

C

The constitutional framework governing this appeal is not materially in dispute. "[C]onstitutional rights do not mature and come into being magically only when one attains the state-defined age of majority." *Planned Parenthood of Cent. Mo. v. Danforth*, 428 U.S. 52, 74 (1976). Minors, like adult women, have a constitutional right to an abortion, and "the State does not have the constitutional authority to give a third party an absolute, and possibly arbitrary, veto over the decision of the physician and his patient to terminate the patient's pregnancy, regardless of the reason for withholding the consent." *Id.* Indeed, an unwanted pregnancy may be more of a crisis for a minor than for an adult, not least because she cannot postpone the abortion decision until her majority, and therefore "'there are few situations in which denying a minor the right to make an important decision will have consequences so grave and indelible.'" *H.L. v. Matheson*, 450 U.S. 398, 436 (1981) (Marshall, J., dissenting) (quoting *Bellotti v. Baird*, 443 U.S. 622, 642 (1979) (plurality opinion of Powell, J.) (*Bellotti II*)).

However, the Supreme Court has "long upheld" regulations on the abortion of minors that would be unconstitutional if applied to adult women, including laws fostering parental involvement in a minor's decision to have an abortion. *Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 326-27 & n.1 (2006) (noting that the Supreme Court has upheld such laws and listing parental consent and notification statutes in forty-four states). Such regulations are said to be justified by the State's important interest in the welfare of its children.

*Planned Parenthood Ass'n of Kansas City, Mo. v. Ashcroft*, 462 U.S. 476, 490–91 (1983); *Matheson*, 450 U.S. at 411 ("As applied to immature and dependent minors," a notice law "plainly serves the important considerations of family integrity and protecting adolescents.") (footnotes omitted). Nonetheless, consistent with the holding that states may not impose an arbitrary veto on a minor's abortion right, the Supreme Court has required parental *consent* laws to include an alternative to parental consent for mature minors and those whose best interests are served thereby:

> [E]very minor must have the opportunity—if she so desires—to go directly to a court without first consulting or notifying her parents. If she satisfies the court that she is mature and well enough informed to make intelligently the abortion decision on her own, the court must authorize her to act without parental consultation or consent. If she fails to satisfy the court that she is competent to make this decision independently, she must be permitted to show that an abortion nevertheless would be in her best interests. If the court is persuaded that it is, the court must authorize the abortion. If, however, the court is not persuaded by the minor that she is mature or that the abortion would be in her best interests, it may decline to sanction the operation.

*Bellotti II*, 443 U.S. at 647–48.[4]

---

[4] The plurality in *Bellotti II* also required that the alternative to parental consent must "be completed with anonymity and sufficient expedition to provide an effective opportunity for

(continued...)

The plaintiffs argue, and we have previously held, *see Zbaraz v. Hartigan*, 763 F.2d 1532, 1539 (7th Cir. 1985) (*Zbaraz I*); *Ind. Planned Parenthood Affiliates Ass'n, Inc. v. Pearson*, 716 F.2d 1127, 1132 (7th Cir. 1983), that the *Bellotti II* standard also applies to *notice* statutes. We need not revisit this question here, because we find that the Illinois notice statute is constitutional under *Bellotti II*'s criteria for consent statutes and therefore that *a fortiori* it satisfies any criteria that might be required for bypass provisions in notice statutes. *See Ohio v. Akron Ctr. for Reprod. Health*, 497 U.S. 502, 510 (1990) (*Akron II*). However, we note that subsequent Supreme Court case law conflicts with the conclusions in *Zbaraz I* and *Pearson*, both of which rest on language in opinions addressed only to the constitutional requirements of requiring parental *consent* (in contrast to requiring merely notification). *See Pearson*, 716 F.2d at 1132 (citing *Bellotti II*, 443 U.S. at 647, and *City of Akron v. Akron Ctr. for Reprod. Health*, 462 U.S. 416, n.10 & n.31 (1983) (*Akron I*)); *Zbaraz I*, 763 F.2d at 1539 (citing *Bellotti II*, 443 U.S. at 651, and *Pearson*, 716 F.2d at 1132). In the two-and-a-half decades since our decisions in *Pearson* and *Zbaraz I*, the Supreme Court has repeatedly stated that it has "declined to decide whether a parental notification statute must include some sort of bypass provision to be constitutional." *Lambert v. Wicklund*, 520 U.S. 292, 295 (1997) (per

---

(...continued)
an abortion to be obtained." *Bellotti II*, 443 U.S. at 644. The plaintiffs do not dispute that Rule 303A satisfies *Bellotti II*'s speed and anonymity requirements.

curiam) (discussing *Akron II*, 497 U.S. at 510); *see also Akron II*, 497 U.S. at 510 ("We leave the question open, because, whether or not the Fourteenth Amendment requires notice statutes to contain bypass procedures, H.B. 319's bypass procedure meets the requirements identified for parental consent statutes in *Danforth*, *Bellotti* [*II*], *Ashcroft*, and *Akron* [*I*]."). Like the Court in *Akron II*, we do not reach out to decide whether, if we were faced with a notice statute that did *not* include a bypass procedure such as the procedure at issue here, such a statute would be valid.[5]

---

[5] The plaintiffs argue that we are bound by the holding in *Zbaraz I* as the "law of the case." Aside from the fact that the question need not be decided here, the law of the case doctrine does not apply to previous rulings based on plain error. *Creek v. Vill. of Westhaven*, 144 F.3d 441, 446 (7th Cir. 1998) ("This court has long held that matters decided on appeal become the law of the case to be followed . . . on second appeal, in the appellate court, *unless there is plain error of law in the original decision*.") (internal quotation marks and citations omitted and emphasis added). There were strong indications even prior to *Akron II* that the Supreme Court had not decided whether to apply the same standards to notice statutes as it applied to consent statutes. *See H.L. v. Matheson*, 450 U.S. 398, 411 & n.17 (1981) (upholding a two-parent notice statute without a bypass alternative as applied to immature minors whose best interests are served by notice and indicating that notice statutes are not equivalent to consent statutes because they do not give anyone a veto power over a minor's abortion decision). *Compare Akron I*, 462 U.S. at 441, n.31 (noting that a *bypass* may not be constitutionally required in notice statutes but that some alternative to

(continued...)

With these principles in mind, we address the constitu-
tionality of the bypass provision in Illinois' notice statute.


D

This is a facial challenge. Under the Supreme Court's
precedent governing facial challenges to abortion laws, a
law enacted to promote a legitimate state interest will

---

(...continued)

parental notice *is* required, at least for mature minors), *and Akron
II*, 497 U.S. at 523 (Stevens, J., concurring) ("Thus, while a
judicial bypass may not be necessary to take care of the cases in
which the minor is mature or parental notice would not be in her
best interests—and, indeed, may not be the preferable mecha-
nism—the Court has held that some provision must be made for
such cases."), *with Akron I*, 462 U.S. at 470, n.12 (O'Connor, J.,
dissenting) ("In my view, no decision of this Court has yet
held that parental notification in the case of mature minors
is unconstitutional.").

Even if not "plain error" based on these earlier decisions, our
holding in *Zbaraz I* (and *Pearson*) appears to be in conflict
with *Akron II* and *Lambert*, and would merit revisiting if ever
we are squarely presented with this question in the future,
notwithstanding the law of the case. *Avitia v. Metro. Club of
Chi., Inc.*, 49 F.3d 1219, 1227 (7th Cir. 1995) ("A judge may
reexamine his earlier ruling (or the ruling of a judge previously
assigned to the case, or of a previous panel if the doctrine is
invoked at the appellate level) if he has a conviction at once
strong and reasonable that the earlier ruling was wrong, and
if rescinding it would not cause undue harm to the party
that had benefitted from it.").

be deemed valid unless "in a large fraction of the cases in which [the law] is relevant, it will operate as a substantial obstacle to a woman's choice to undergo abortion." *Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833, 895 (1992).[6] Because "[l]egislation is measured for consistency with the Constitution by its impact on those whose conduct it affects," when analyzing abortion restrictions "[t]he proper focus of constitutional inquiry is the group for whom the law is a restriction, not the group for whom the law is irrelevant." *Id.* at 894. *See also A Woman's Choice-E. Side Women's Clinic v. Newman*, 305 F.3d 684, 706–07 (7th Cir. 2002) (Wood, J., dissenting) (discussing *Casey*'s "large fraction" test, under which " '[t]he analysis does not end with the one percent of women upon whom the statute operates; it begins there' ") (quoting *Casey*, 505 U.S. at 894).

---

[6] Although there is some disagreement over whether *Casey*'s "large fraction" test remains vital in light of more recent Supreme Court precedent affirming *United States v. Salerno*'s instruction that plaintiffs can only succeed in a facial challenge by "establish[ing] that no set of circumstances exists under which the Act would be valid," 481 U.S. 739, 745 (1987), *see Washington State Grange v. Washington State Republican Party*, 128 S. Ct. 1184, 1190 (2008) (quoting same), we hold that the Illinois notice act is constitutional under either standard. *See also Richmond Medical Ctr. for Women v. Herring*, No. 03-1821, slip op. at 16–17 (4th Cir. June 24, 2009) (en banc); *Cincinnati Women's Svcs., Inc. v. Taft*, 468 F.3d 361, 367 n.3 (6th Cir. 2006) (suggesting that the "large fraction" analysis is unnecessary where a facial challenge hinges entirely on statutory interpretation).

Here, the group for whom the law is a restriction consists of minors who prefer not to notify their parents of their decision to have an abortion. The law provides an exception to notice for such minors, if they establish that they are mature enough to make the decision on their own or that notice is not in their best interests. The plaintiffs focus on a subset of minors in the latter group—minors who are *immature* and for whom an abortion without parental notice would be in their best interests. They argue that the statute lacks language that would allow a bypass judge to authorize such minors to consent to an abortion notwithstanding their immaturity.

We have previously rejected a facial challenge to an Indiana law requiring a woman to make two visits to an abortion clinic so that information about the abortion can be provided to her face-to-face, rather than by telephone or website, before she obtains an abortion. *Newman*, 305 F.3d at 685. We upheld the law despite the district court's findings that similar laws in Mississippi and Utah had led to a decline in abortions in those states. *Id.* at 693 ("If Indiana's emergency-bypass procedure fails to protect Indiana's women from risks of physical or mental harm, it will be a failure *in operation*; it is not possible to predict failure before the whole statute goes into force."). The Indiana law was upheld over Judge Wood's dissent, which argued that the majority disregarded the standards established by *Casey*, and "brush[ed] aside" the district court's findings of fact. *Id.* at 704–05 (Wood, J., dissenting).

Although, like the Indiana statute in *Newman*, the
Illinois statute here is almost identical to statutes that
have been upheld by the Supreme Court, this case differs
markedly from *Newman* because the district court here
did *not* rely on factual findings to distinguish this
statute from others that have been found to be facially
valid. The record on appeal does contain four affidavits of
directors and other employees of Planned Parenthood
offices across Illinois, describing their unsuccessful at-
tempts to get information from various circuit clerk's
offices about how the notice statute's bypass procedures
would operate in practice. *See Zbaraz v. Madigan*, No. 84 C
771, Doc. No. 187-2 (Exs. to Pls.' Mem. in Opp'n to
Defs.' Mot. to Dissolve the Permanent Inj.). With these
affidavits, the plaintiffs sought to establish that the
bypass itself erects an undue barrier to a minor woman's
right to an abortion. But these affidavits do little to estab-
lish that the bypass procedure would not operate as
intended. The process is nascent; clerks understandably
lack familiarity with it.[7] Moreover, the record also con-

---

[7] More compelling evidence might have been in the form of,
for instance, affidavits from young women establishing that
they would not have been able to avail themselves of the
bypass procedure without their parents learning of it, such
that the bypass offered a *de jure* but not a *de facto* remedy.
We express no view regarding the availability or likely success
of such evidence, but offer it in contrast to the evidence
actually provided only to point out that the evidence in this
case says little if anything about the impact of the notice
statute on actual women.

tains a letter from the Illinois Supreme Court stating that
"our state courts are prepared to proceed to apply the
law as enacted." On this record, the district court wisely
declined to question the state's ability to implement its
own laws and presumed that the state courts would be
able to carry out Rule 303A procedures properly and
adequately. The district court's holding that the notice
statute is nonetheless unconstitutional on its face was
based not on findings related to how the statute would
operate in practice, but rather on the court's interpreta-
tion of the statute's language as a matter of law.

In particular, and dispositively, the district court held
that "[t]he 1995 Act authorizes the court to waive
parental notification when it is in the 'best interest' of the
child, *but does not authorize a method of consent for the abor-
tion*." *Zbaraz*, 2008 WL 589028, at *3 (emphasis supplied).
Citing the language from three other notice statutes (those
of Montana, Ohio, and Massachusetts)—all of which
contain provisions instructing that bypass courts "shall
issue an order authorizing the petitioner to consent to
an abortion"—the district court concluded that "[t]he
Illinois statute lacks the language that permits a state
court to authorize the consent for an abortion." *Id.* The
district court held that

> [t]his court cannot presume that the statute
> authorizes something that it does not state. As such,
> the minor is left without recourse, except to obtain
> consent from her parents, which the court, under
> these circumstances, has deemed not in her best
> interest. The statute is contradictory and incomplete

on its face without an authorization of consent provi-
sion, and this court declines to lift the permanent
injunction under these circumstances.[8]

*Id.*

The district court's ruling that the notice act does not
authorize a method of consent for best interest minors
appears to rely on the following chain of argument raised
by the plaintiffs both below and on appeal. In what may
be an excess of ingenuity, the plaintiffs argue that,
without an express authorization of consent provision,
any order issued by a bypass court waiving parental notice
for "best interest" minors will be ineffective to authorize
consent because (1) the court will necessarily consider a
minor's maturity first and only reach the "best interests"
question if it concludes that a minor is too immature to
make the abortion decision on her own; (2) such a finding
of immaturity will necessarily be included in the bypass
court's decision waiving parental notice because the notice
act requires the bypass court to "issue written and specific
factual findings and legal conclusions supporting its
decision," § 25(e); and (3) once a minor has been adjudi-
cated to be immature, she will be unable to consent to
an abortion on her own, because of Illinois' common law
rule requiring informed consent to all medical procedures:
an immature minor cannot give informed consent. Each
link in this chain of argument misinterprets the language

---

[8] The district court rejected the plaintiffs' other challenges to
the statute, but because the plaintiffs did not file a cross-
appeal, those rulings are not before us.

of the statute and ignores its purpose. We therefore reject the plaintiffs' interpretation.

**First**, we find that the initial premise—that the statute lacks an authorization-of-consent provision—misses the mark. The language and structure of the notice act *do* enable bypass courts to issue orders authorizing consent to an abortion without notice. Section 25, the portion of the act that addresses the judicial bypass procedures, provides that "[n]otice shall be waived" if the court finds that the minor is either "sufficiently mature and well enough informed to decide intelligently whether to have an abortion," or "that notification . . . would not be in the best interests of the minor." § 25(d). Section 25(f), which addresses appeals, states that "[a]n order authorizing an abortion without notice shall not be subject to appeal." This language plainly contemplates the court's power to issue such an order. What type of order? "An order authorizing an abortion without notice." § 25(f). This sentence would be meaningless if the bypass provisions in Section 25(d) did not provide for an order authorizing an abortion without notice. Any argument to the contrary distorts the language and ignores entirely this sentence in Section 25(f), all to reach for an unconstitutional meaning. This is not permissible. " 'Where fairly possible, courts should construe a statute to avoid a danger of unconstitutionality.' " *Akron II*, 497 U.S. at 514 (quoting *Ashcroft*, 462 U.S. at 493). In any event, an express authorization-of-consent provision is unnecessary because each of the plaintiffs' remaining premises also fails.

**Second**, the language of the notice act does not require maturity to be considered *before* best interests. To be

sure, there is language in the relevant case law suggesting that maturity is generally considered first. *See Bellotti II*, 443 U.S. at 647–48 ("If she fails to satisfy the court that she is competent to make this decision independently, she must be permitted to show that an abortion never-theless would be in her best interests."); *Zbaraz I*, 763 F.2d at 1538 (referring repeatedly to "mature minors and immature minors whose best interests require an abor-tion"). But nothing in the statute or the case law *requires* this order of decision. The Supreme Court has rejected the notion that multi-part legal tests must be performed in a particular order simply because a statute or case articulates the test in that order. *Pearson v. Callahan*, 129 S. Ct. 808, 821 (2009). To the contrary, it is well settled that "[u]nless its jurisdiction is at stake, a court may take up issues in whatever sequence seems best, given the nature of the parties' arguments and the interest in avoiding unnecessary constitutional decisions." *Aleman v. Sternes*, 320 F.3d 687, 691 (7th Cir. 2003). There may be circumstances where it makes more sense for a court to consider best interests first, or to consider only best interests, whether based on judicial economy, or the petitioner's chosen method of presenting her case, or some other reason. The act does not foreclose this flexibility.

**Third**, and relatedly, the statutory language does not require bypass courts to make findings on grounds *both* of maturity *and* of best interests. Section 25(d) requires that notice shall be waived if the minor establishes *either* that she is mature *or* that an abortion without notice is in her best interests. Section 25(c) requires the court to "issue written findings of fact and conclusions of law . . . ," and Section 25(e) requires that the court "shall issue

written and specific factual findings and legal conclusions supporting its decision . . ." Nowhere does the act provide more specificity regarding what the court must include in its findings. A bypass court, then, is free to base its decision on findings directed solely to the minor's best interests. This conclusion serves judicial economy because it may streamline the proceedings by narrowing the issues. Moreover, even immature minors have a right to an abortion without parental consent when such an abortion is in their best interest. If a bypass court were to make findings regarding a "best interests" minor's immaturity, those findings would not deprive the court of power to authorize consent to an abortion—indeed, the court in such a circumstance would be *compelled* to authorize the minor's consent to an abortion. Finally, the Supreme Court has upheld the Ohio notice statute's bypass procedure (which contains a substantively indistinguishable "either/or" provision for establishing maturity or best interests), under which the Ohio courts have promulgated three separate pleading forms: one for petitioners seeking to prove "maturity," one for "best interests," and one for petitioners arguing both maturity and best interests. *Akron II*, 497 U.S. at 516. The Supreme Court upheld the use of these forms, which clearly contemplate bypass proceedings that are addressed *only* to best interests. If a petitioner chooses to establish only that an abortion without notification is in her best interests, a bypass court in Illinois, as in Ohio, will be free to make findings with respect to her best interests only. In fact, such a court likely will be unable to make findings with respect to maturity because a minor choosing to establish only "best interests" may

decide not to present any evidence regarding her maturity. In any event, the bypass court is not *required* to make findings on maturity where the minor focuses the hearing on the "best interests" prong and chooses not to present evidence on other issues.

**Fourth**, even setting aside all of the above and assuming the truth of the assertion in the third link in the plaintiffs' chain of reasoning—that an immature minor cannot give informed consent to her own abortion[9]—the argument

---

[9] Our decision does not depend on this state-law question, and therefore we need not decide it. However, we note that as a general proposition, Illinois law allows pregnant minors to consent to their own medical procedures, including abortion, to the same extent as a "person of legal age." 410 ILCS 210/1 (Consent by Minors to Medical Procedures Act). The defendants argue that the Consent by Minors Act serves as the backdrop against which the notice act must be read. The notice statute does not need an authorization-of-consent provision, the argument goes, because the Consent by Minors Act already authorizes minors to consent to their abortions, abrogating the common law rule that minors must establish their maturity in court before consenting to such procedures. In most cases, then, court-ordered consent may be unnecessary. The defendants further point out that the three statutes the district court relied on for its holding that an authorization-of-consent provision *is* necessary were written against different state-law backdrops. Montana and Ohio lack statutes such as the Consent by Minors Act, so their state legislatures may have felt that, in drafting the bypass provisions of their notice statutes, they had to overcome the common law "mature minor" rule by explicitly enabling the bypass court to authorize a minor to consent to her abortion. The Massachusetts law cited by the

(continued...)

still fails. The minor will not need to consent on her own. Even without statutory authorization, the court may issue an order authorizing consent. The district court held to the contrary that the statute's bypass provision forecloses this option and that bypass judges would be hamstrung in their attempts to authorize consent for immature minors when an abortion without parental notice is in the minors' best interests. But this is unreasonable. Courts do not need explicit legislative authorization to issue orders in aid of their judgments. That authority inheres in the judicial power. *Virginia v. West Virginia*, 246 U.S. 565, 591 (1918) ("That judicial power essentially involves the right to enforce the results of its exertion is elementary."); *Fid. Nat'l Title Ins. Co. v. Intercounty Nat'l Title Ins. Co.*, 412 F.3d 745, 752 (7th Cir. 2005) ("[A] judge's power includes not only what he is expressly empowered to do but also such ancillary powers as are

(...continued)

district court was a consent law that stripped minors of the ability to consent, so its bypass provision needed to authorize consent on their behalf.

The plaintiffs respond that the Illinois Consent by Minors Act simply puts minors on the same footing as adults by eliminating minority as a per se bar to consent, and that minors still must provide "informed consent" to an abortion, just as any adult woman must do. Again, we do not address the state-law question of what it means to give "informed consent" or whether an "immature" minor will be unable to do so. The bypass court may authorize her consent in any event. But in general, it appears that such court-ordered consent may be unnecessary for most minors affected by the act.

necessary and proper to his exercise of the explicitly conferred ones."); *Leathe v. Thomas*, 97 F. 136, 139 (7th Cir. 1899) ("[The] rule is universal that, if the power is conferred to render the judgment or enter the decree, it also includes the power to issue proper process to enforce such judgment or decree."). This basic principle of common law is well established in Illinois jurisprudence and does not depend on express statutory authorization. *See Sandburg v. Papineau*, 81 Ill. 446, 448-49 (1876) ("There is no principle of law better recognized than that which gives to courts of record power over the process of their courts. It is essential to the administration of justice, and it by no means depends upon statutory enactment."); *Ill. Health Maint. Org. Guar. Ass'n v. Shapo*, 357 Ill. App. 3d 122, 141, 826 N.E.2d 1135, 1151 (Ill. App. Ct. 2005) ("[T]he trial court 'has the inherent authority to enforce its judgments.'") (quoting *In re Marriage of Ward*, 267 Ill. App. 3d 35, 44, 641 N.E.2d 879, 885 (Ill. App. Ct. 1994)). *See also Vill. of Gilberts v. Holiday Park Corp.*, 150 Ill. App. 3d 932, 936–37, 502 N.E.2d 378, 380 (Ill. App. Ct. 1986); *Adam Martin Constr. Co. v. Brandon P'ship*, 135 Ill. App. 3d 324, 326, 481 N.E.2d 962, 964 (Ill. App. Ct. 1985).

Applicable to this case, if a state bypass court determines that a minor has established one of the exceptions to the act's notice requirements, i.e., that she is either mature or that an abortion without notice is in her best interests, the act *requires* the court to waive parental notice, *see* 750 ILCS 70/25(d) (providing that "[n]otice shall be waived" if the minor establishes either of the two exceptions to notice by a preponderance of the evidence), so that the minor may obtain an abortion without telling her parents. That the act lacks a provision expressly

instructing the court to issue an order giving effect to its decision does not impair its plain power of enforcement. What would be the point of providing for a waiver of notice if there were no way to enforce it? The act clearly contemplates the court's ability to follow through on this score, which is well supported by the common law governing courts' inherent authority.

An order conferring consent may be practically necessary for the court to carry out its determination that notice shall be waived. For example, the physician to whom the notice act is directed, *see* 750 ILCS 70/15 ("No person shall knowingly perform an abortion upon a minor . . . unless the physician or his or her agent has given at least 48 hours actual notice to an adult family member . . ."), may not know whether the court has waived the notice requirement unless the minor presents an order from the court. And, in response to the plaintiffs' own concerns, such physicians may be legitimately worried about the legality of performing an abortion without notice on a minor who appears to be immature or uninformed. To enforce a judgment that an abortion without notice is in such a minor's best interests, then, a state bypass judge will likely need to issue an order authorizing the minor's consent. Any argument that bypass courts will *not* issue such orders assumes that such courts will act in a way that is unconstitutional. It assumes that bypass judges will find that it is in a minor's best interests to have an abortion without notice but then not issue an order authorizing such an abortion, potentially leaving such minors with an unconstitutional choice: forgo the abortion or obtain the consent of a parent. And even though we do not revisit

today whether minors have a constitutional right to a judicial bypass alternative to *notifying* their parents, it is beyond dispute that mature minors and immature "best interest" minors have a right to bypass parental *consent*. *Bellotti II*, 443 U.S. at 647–48.[10] The plaintiffs' argument depends on the speculative assertion that bypass courts will ignore Supreme Court precedent and deny "best interest" minors this right. Again, we will not assume that state courts will act in this way on a facial challenge to the act. *Akron II*, 497 U.S. at 542 (Stevens, J., concurring).

**Fifth** and finally, the district court's interpretation of the statute ignores its purpose, which is to require notice to parents, unless a bypass court waives notification because the minor is mature or notification is not in her best interests. §§ 15, 25(d). The plaintiffs' interpretation of the bypass provisions would *disallow* "best interest" abortions. This squarely contradicts the purpose of the second half the judicial bypass provision, which is to *allow* abortions without notification whenever doing so would be in the minor's best interests. Just as we will not reach for an unconstitutional interpretation of statutory language, neither will we construe a statute in a way that leads to absurd results. "It is an elementary rule of construction that 'the act cannot be

---

[10] Indeed, *Bellotti II* was explicit on this point. 443 U.S. at 647–48 ("If she fails to satisfy the court that she is competent to make this decision independently, she must be permitted to show that an abortion nevertheless would be in her best interests. If the court is persuaded that it is, the court must authorize the abortion.").

held to destroy itself.'" *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 20 (1995) (citation omitted). *See Treadway v. Gateway Chevrolet Oldsmobile Inc.*, 362 F.3d 971, 976 (7th Cir. 2004) ("'Nonsensical interpretations of contracts, as of statutes, are disfavored . . . [n]ot because of a judicial aversion to nonsense as such, but because people are unlikely to make contracts, or legislators statutes, that they believe will have absurd consequences.'") (quoting *FutureSource L.L.C. v. Reuters Ltd.*, 312 F.3d 281, 284–85 (7th Cir. 2002)). An interpretation that flies in the face of a statute's purpose, like that advanced by the plaintiffs here, leads to an absurd result. The plaintiffs may seek to draw a distinction between an order "waiving notice" and an order "authorizing consent to an abortion without notice." We find that such a distinction is not compelled by the statute's language and, in fact, nonsensical in the context of the act's bypass provisions. Again, the sole purpose of the bypass provisions is to allow the minor to obtain an abortion without notice; thus, the same court order that "waives notice" also should "authorize consent to an abortion without notice."

## III

Before concluding, we emphasize again how narrow is the argument the plaintiffs raise here. Many, if not all, of the concerns first raised against parental involvement laws in the 1970s and early 1980s have been addressed in later versions of such laws and in this law in particular. Whereas the early parental consent laws were struck down because they lacked a bypass procedure and there-

fore gave parents an absolute, and possibly arbitrary, veto power over the child's abortion decision, *e.g.*, *Danforth*, *supra*, later laws have heeded *Bellotti II*'s instruction to provide such a bypass and to guarantee that it include expeditious and confidential appeals, *e.g.*, *Ashcroft*, *supra*. Notice laws, too, tend to include judicial bypass procedures, showing that state legislatures in enacting such laws have gone beyond what appears to be strictly necessary under the Supreme Court's current jurisprudence. *See Akron II*, *supra*. Thus, by encouraging parental involvement, without requiring it where the minor is mature or such involvement will do more harm than good, laws such as the notice statute before us are, at least facially, closely tailored to serve the state's important interest in making sure minor women make informed decisions about whether to have an abortion. *Cf. Matheson*, 450 U.S. at 441–42, 446–47 (Marshall, J., dissenting).

We acknowledge that there may be practical problems with the procedure at issue here—it may be intimidating for a minor to navigate the process of presenting her case to a judge, for instance. *See Hodgson v. Minnesota*, 497 U.S. 417, 479 (1990) (Marshall, J., dissenting); *Ashcroft*, 462 U.S. at 504 (Blackmun, J., dissenting); *Bellotti II*, 443 U.S. at 655–56 (Stevens, J., concurring). But we fail to see a better alternative. Abortion, no matter how it is confronted, may present intimidating choices to the minor woman who faces it. There is perhaps no way around that fact, even without state regulation impinging on the choice. What is more, notice statutes substantively identical to that enacted by the Illinois General Assembly

have been upheld as facially valid on the basis of the State's important interest in the welfare of its minors. *E.g.*, *Matheson*, 450 U.S. at 421 (Stevens, J., concurring) (describing this interest as "fundamental and substantial").[11] Nothing we say here treads new ground in that regard, as these difficult issues have been, and will continue to be, debated at length elsewhere. We need not add much more to the debate, and we express no view as to whether the Illinois notice act would withstand an as-applied challenge by individual women who have attempted to participate in bypass proceedings and found them wanting. It suffices to hold that the statute as written is a permissible attempt to help a young woman make an informed choice about whether to have an abortion, and therefore that the order of the district court is REVERSED and the permanent injunction barring enforcement of the act is dissolved.

---

[11] The State also has a well-established interest in protecting the parent's right to make decisions about the upbringing of her children. That interest justifies state-imposed requirements that a minor obtain a parent's consent before undergoing an operation, marrying or entering military service, and it extends to the minor's decision to terminate her pregnancy. *Hodgson*, 497 U.S. at 444–45 (Stevens, J., concurring) (citations omitted).

APPENDIX

**Selected Sections of the Parental Notification of Abortion Act of 1995, 750 ILCS 70/1** *et seq.*

§ 5. Legislative findings and purpose. The General Assembly finds that notification of a family member as defined in this Act is in the best interest of an unemancipated minor, and the General Assembly's purpose in enacting this parental notice law is to further and protect the best interests of an unemancipated minor.

The medical, emotional, and psychological consequences of abortion are sometimes serious and long-lasting, and immature minors often lack the ability to make fully informed choices that consider both the immediate and long-range consequences.

Parental consultation is usually in the best interest of the minor and is desirable since the capacity to become pregnant and the capacity for mature judgment concerning the wisdom of an abortion are not necessarily related.

§ 15. Notice to adult family member.[1] No person shall knowingly perform an abortion upon a minor or upon an incompetent person unless the physician or his or her agent has given at least 48 hours actual notice to an adult family member of the pregnant minor or incompetent

---

[1] The notice act defines "adult family member" to mean "a person over 21 years of age who is the parent, grandparent, stepparent living in the household, or legal guardian" of the minor or pregnant incompetent. 750 ILCS 70/10.

person of his or her intention to perform the abortion, unless that person or his or her agent has received a written statement by a referring physician certifying that the referring physician or his or her agent has given at least 48 hours notice to an adult family member of the pregnant minor or incompetent person. If actual notice is not possible after a reasonable effort, the physician or his or her agent must give 48 hours constructive notice.

§ 20. Exceptions. Notice shall not be required under this Act if:

(1) the minor or incompetent person is accompanied by a person entitled to notice; or

(2) notice is waived in writing by a person who is entitled to notice; or

(3) the attending physician certifies in the patient's medical record that a medical emergency exists and there is insufficient time to provide the required notice; or

(4) the minor declares in writing that she is a victim of sexual abuse, neglect, or physical abuse by an adult family member as defined in this Act. The attending physician must certify in the patient's medical record that he or she has received the written declaration of abuse or neglect. Any notification of public authorities of abuse that may be required under other laws of this State need not be made by the person performing the abortion until after the minor receives an abortion that otherwise complies with the requirements of this Act; or

(5) notice is waived under Section 25.

§ 25. Procedure for judicial waiver of notice.

(a) The requirements and procedures under this Section are available to minors and incompetent persons whether or not they are residents of this State.

(b) The minor or incompetent person may petition any circuit court for a waiver of the notice requirement and may participate in proceedings on her own behalf. The court shall appoint a guardian ad litem for her. Any guardian ad litem appointed under this Act shall act to maintain the confidentiality of the proceedings. The circuit court shall advise her that she has a right to court-appointed counsel and shall provide her with counsel upon her request.

(c) Court proceedings under this Section shall be confidential and shall ensure the anonymity of the minor or incompetent person. All court proceedings under this Section shall be sealed. The minor or incompetent person shall have the right to file her petition in the circuit court using a pseudonym or using solely her initials. All documents related to this petition shall be confidential and shall not be made available to the public.

These proceedings shall be given precedence over other pending matters to the extent necessary to ensure that the court reaches a decision promptly. The court shall rule and issue written findings of fact and conclusions of law within 48 hours of the time that the petition is filed, except that the 48-hour limitation may be extended at the request of the minor or incompetent person. If the court fails to rule within the 48-hour period and an extension is not requested, then the petition shall be deemed to have been granted, and the notice requirement shall be waived.

(d) Notice shall be waived if the court finds by a preponderance of the evidence either:

> (1) that the minor or incompetent person is sufficiently mature and well enough informed to decide intelligently whether to have an abortion, or

> (2) that notification under Section 15 of this Act would not be in the best interests of the minor or incompetent person.

(e) A court that conducts proceedings under this Section shall issue written and specific factual findings and legal conclusions supporting its decision and shall order that a confidential record of the evidence and the judge's findings and conditions be maintained.

(f) An expedited confidential appeal shall be available, as the Supreme Court provides by rule, to any minor or incompetent person to whom the circuit court denies a waiver of notice. An order authorizing an abortion without notice shall not be subject to appeal.

(g) The Supreme Court is respectfully requested to promulgate any rules and regulations necessary to ensure that proceedings under this Act are handled in an expeditious and confidential manner.

(h) No fees shall be required of any minor or incompetent person who avails herself of the procedures provided by this Section.

*The Act also amends Sections 22 and 23 of the Illinois Medical Practice Act, 225 ILCS 60/22 and 60/23, to impose penalties upon physicians who do not comply with the Act when performing abortions on minors or incompetent women.*

**225 ILCS 60/23(A)(4), as amended by Section 85 of the Parental Notice of Abortion Act of 1995**. The State's Attorney of each county shall report to the Disciplinary Board all instances in which a person licensed under this Act is convicted or otherwise found guilty of the commission of any felony. The State's Attorney of each county may report to the Disciplinary Board through a verified complaint any instance in which the State's Attorney believes that a physician has willfully violated the notice requirements of the Parental Notice of Abortion Act of 1995.

**225 ILCS 60/22(A)**. The Department may revoke, suspend, place on probationary status, refuse to renew, or take any other disciplinary action as the Department may deem proper with regard to the license or visiting professor permit of any person issued under this Act to practice medicine, or to treat human ailments without the use of drugs and without operative surgery upon any of the following grounds:

> (40) Willful failure to provide notice when notice is required under the Parental Notice of Abortion Act of 1995.

**225 ILCS 60/22(C)**. The Medical Disciplinary Board shall recommend to the Department civil penalties and any other appropriate discipline in disciplinary cases when the Board finds that a physician willfully performed an abortion with actual knowledge that the person upon whom the abortion has been performed is a minor or an incompetent person without notice as required under the Parental Notice of Abortion Act of 1995. Upon the

Board's recommendation, the Department shall impose, for the first violation, a civil penalty of $1,000 and for a second or subsequent violation, a civil penalty of $5,000.

**Illinois Supreme Court Rule 303A. Expedited and Confidential Proceedings Under the Parental Notification of Abortion Act**

(a) Entry of Judgment in the Circuit Court. Upon the filing of a petition in the circuit court for judicial waiver of notice under the Parental Notification of Abortion Act, the circuit court shall rule and issue written findings of fact and conclusions of law within 48 hours of the time that the petition is filed with weekends and holidays excluded, except that the 48-hour limitation may be extended at the request of the minor or incompetent person. The court shall endeavor to rule at the conclusion of any hearing on the petition, but in any event shall rule within 48 hours of the filing of the petition, weekends and holidays excluded, except that the time period for ruling may be extended at the request of the minor or the incompetent person. If the decision is not rendered immediately following a hearing, then the petitioner shall be responsible for contacting the clerk of the court for notification of the decision. All notifications pursuant to this procedure may be informal and shall be confidential. If the court fails to rule within the 48-hour period and an extension is not requested, then the petition shall be deemed to have been granted and the notice requirement shall be waived. A decision denying a judicial waiver of notice is a final and appealable order, which is

appealable in the manner provided in the following paragraphs of this rule.

(b) Review to the Appellate Court as a Matter of Right. In accordance with the provisions of this rule, a minor or incompetent person shall be entitled to an appeal to the Appellate Court as a matter of right when the circuit court denies her a waiver of notice under the Parental Notification of Abortion Act.

(c) Review in the Appellate Court. Review of the denial of a waiver of notice under the Parental Notice of Abortion Act shall be by petition filed in the Appellate Court. The petition shall be in writing, state the relief requested and the grounds for the relief requested, and filed within two days, weekends and holidays excluded, of entry of the denial from which review is being sought, except that the two-day period may be extended at the request of the minor or incompetent person. An appropriate supporting record shall accompany the petition, including a record of proceedings, a copy of the petition filed in the circuit court, the decision of the circuit court, including the specific findings of fact and legal conclusions supporting the decision, and any other supporting documents or matters of record necessary to the petition. The supporting record must be authenticated by the certificate of the circuit court clerk or by the affidavit of the attorney or party filing it.

(d) Appointment of Counsel. The Appellate Court shall appoint counsel to assist the petitioner if she so requests.

(e) Statement of Facts and Memoranda of Law. The minor or incompetent petitioner may file a brief state-

ment of facts and memorandum of law supporting her petition, which together shall not exceed 15 typewritten pages and which also must be filed within two days, excluding weekends and holidays, of the entry of the order being appealed under paragraph (a) of this Rule.

(f) Confidentiality. All proceedings under this rule shall be confidential. The petitioner shall be identified in the petition and any supporting memorandum in the method provided under Rule 660(c), as in appeals in cases arising under the Juvenile Court Act. Alternatively, the petitioner may use a pseudonym if she so requests. All documents relating to proceedings shall be impounded and sealed subject to review only by the minor, her attorney and guardian ad litem, the respective judges and their staffs charged with reviewing the case and the respective court clerks and their staffs. After entry of an order by the Appellate Court, the clerk of the Appellate Court shall review the proceedings. If leave to appeal is not sought by the petitioner, the clerk of the Appellate Court shall seal the record on appeal before returning it to the clerk of the circuit court. Any appellate court file shall also be sealed. If leave to appeal to the Supreme Court is sought, the petition for leave to appeal and all supporting documents shall identify the petitioner in manner provided under Rule 660(c). The file in the Supreme Court shall also be sealed and impounded following the decision of the Supreme Court. All notifications of court rulings under this rule may be informal and shall be confidential.

(g) Time for Decision; No Oral Argument. After the petitioner has filed the petition for review in the Appellate

Court, along with a supporting record and any memorandum, the Appellate Court shall consider, decide the petition and issue a confidential written order within three days, excluding weekends and holidays. The petitioner shall be responsible for contacting the clerk of the Appellate Court for notification of the decision. Oral argument on the petition will not be heard.

(h) Supreme Court Review. If the Appellate Court affirms the denial of a waiver of notice, the petitioner may file a petition for leave to appeal with the Supreme Court within two days, excluding weekends and holidays, of the Appellate Court's decision to affirm the denial of a waiver of notice, except that the two-day period may be extended at the request of the minor or incompetent person. The petition for leave to appeal to the Supreme Court shall contain (1) a statement of issues presented for review and how those issues were decided by the circuit and appellate courts, (2) a brief statement explaining the reason for appeal to the Supreme Court, (3) any memorandum and statement of facts presented to the appellate court, and (4) the written orders of the circuit and appellate courts. The Supreme Court shall decide whether to allow leave to appeal within three days, excluding weekends and holidays, of the filing of the leave to appeal. In deciding whether to allow leave to appeal, the Supreme Court's discretion shall be guided by the criteria listed in Rule 315(a). The confidentiality of the proceedings shall be maintained in the manner described in paragraph (f) of this rule. If leave to appeal is allowed, the petitioner must then file the record from the proceedings in the circuit court with the clerk the

Supreme Court within two days, excluding weekends and holidays, of the date that leave to appeal is allowed, except that the two day period may be extended at the request of the minor or incompetent person. Oral argument in the case will not be heard. The Supreme Court shall then issue a confidential written decision within five days, excluding weekends and holidays, of the date it allowed the petition for leave to appeal. The Supreme Court shall render its decision based on the record from the circuit court, and the petition for leave to appeal and any supporting documentation filed in conjunction with the petition for leave to appeal. The petitioner shall be responsible for contacting the clerk of the Supreme Court for notification of any decisions made by the Supreme Court on either the petition for leave to appeal or the ultimate disposition of the case by the Supreme Court. All notifications of court rulings under this rule may be informal and shall be confidential.

Adopted September 20, 2006, effective immediately.